UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WHEREVERTV, INC.,

    Plaintiff,

v.                                    Case No: 2:18-cv-529-FtM-99CM

COMCAST CABLE
COMMUNICATIONS, LLC,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Doc. #36) filed on November 13, 2018. Plaintiff filed a Response in Opposition (Doc. #44) on November 27, 2018. A Reply (Doc. #49) and Surreply (Doc. #52) were filed. For the reasons set forth below, the Motion is denied.

**I.**

This is a patent infringement dispute concerning U.S. Patent No. 8,656,431 ("'431 Patent") held by plaintiff WhereverTV, Inc., entitled "Global Interactive Program Guide Application and Device."[1] Plaintiff alleges that defendant Comcast's Xfinity X1

---

[1] The '431 Patent (attached to the Amended Complaint at Doc. #30-1), titled "Global Interactive Program Guide Application and Device", discloses a video access and delivery system for today's video entertainment environment. One or more embodiments disclosed in the '431 Patent are directed at receiving, accessing, managing, and viewing digital video such as live television, television on demand, and pre-recorded video and audio programming from multiple content sources, via an Internet-enabled device

Platform has directly infringed and continues to directly infringe on the '431 Patent. (Doc. #30, Amended Complaint.) Comcast moves to dismiss on the basis that the Amended Complaint fails to plausibly allege direct infringement under 35 U.S.C. § 271(a).

**A. The '431 Patent**

Founded in 2006, WhereverTV is an over-the-top television service provider that offers live-streaming video content to subscribing customers around the world and through a wide range of internet-enabled devices. (Doc. #30, ¶ 11.) WhereverTV offers an economically beneficial and versatile alternative to traditional television and satellite services, with the added benefits of personalization and portability. (Id., ¶ 12.) WhereverTV offers its customers access to licensed and free-to-air channels across multiple devices. The customer viewing experience through WhereverTV is based on customer location (geo-targeting) and content-rights management (subscriptions). (Id.) The '431 Patent provides the technological advancement necessary for efficiently addressing the way "cord-cutting" viewers consume video today via streaming over the internet. (Id., ¶¶ 13-18, 20.)

---

(e.g., smart phone, tablet, computer, television), anywhere in the world over an internet connection using an interactive programming guide.

Mark A. Cavicchi, plaintiff's former Chief Executive Officer invented the '431 Patent and transferred all of his rights in the patent to WhereverTV in 2007.

**B. Comcast and the Xfinity Products Accused of Infringing On the '431 Patent**

Comcast is one of the largest cable television and internet providers in the United States that manufactures, markets, and sells a line of "Xfinity"[2] branded products known as "X1." (Doc. #30, ¶ 24.) According to Comcast, the X1 is a multiscreen, cloud-based entertainment platform that is fully managed for end-to-end, cloud-based video delivery.[3] The Xfinity X1 Platform includes a line of Xfinity branded products including, for example, Xfinity Internet, Xfinity Mobile, Xfinity X1 TV, set top boxes, and apps known as Xfinity Stream and Xfinity Remote App, and other related apps and components used to deliver video content over the X1 Platform (collectively, the "X1 Platform"). (Id., ¶ 25.) The Xfinity X1 Platform provides consumers with an integrated experience for watching video entertainment over the internet from anywhere in the world and from numerous kinds of devices. (Id., ¶ 26.)

The X1 Platform includes an interactive programming guide (IPG) application, which can be controlled and operated on a

---

[2] Comcast uses the trade name Xfinity to market cable television, internet, wireless services, as well as streaming video and audio content throughout the United States. (Doc. #30, ¶ 25.)

[3] Plaintiff's Amended Complaint includes screenshots of information Comcast provides to consumers about its accused products.

television, computer, tablet, or smartphone, that combines search results from multiple content sources, including live TV, on-demand programming, DVR recordings, Netflix, YouTube, and others. (Doc. #30, ¶ 27.) Users can choose to watch live television, on demand video, or stream video from Comcast or directly from content owners such as Netflix and YouTube through a fully integrated IPG. (Id., ¶ 31.) Comcast also sells a set-top box receiver and a digital video recorder with the X1 Platform that links a consumer's television, internet, computers, phones, and tablets together for efficiently streaming and watching video entertainment. (Id., ¶ 30.)

The X1 Platform displays a visual directory (or channel guide) that allows a user to select a particular show or movie from a broad listing of content. The user can search for content across different sources using an integrated user interface. (Doc. #30, ¶ 34.) The Xfinity remote control is voice activated. (Id., ¶ 36.)

Xfinity Stream is a video streaming service that operates over an in-home Xfinity Wi-Fi Network and brings a wide range of video content (e.g., live TV, HBO, on demand programming) to customers via their computers, tablets, and smartphones. Subscribers can also watch Xfinity TV Go (or TV Everywhere) programming while way from home over any internet mobile connection using the Xfinity Stream app or portal. (Doc. #30, ¶ 39.)

**II.**

To start, the Court notes that the Federal Circuit[4] has held that Twombly/Iqbal standard is the correct pleading standard to apply in direct patent infringement cases such as this one. See Nalco v. Chem-Mod, LLC, 883 F.3d 1337, 1347-48 (Fed Cir. 2018); Lifetime Industries, Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1377 (Fed Cir. 2017). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. 1955. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

---

[4] The Federal Circuit has "exclusive jurisdiction...of an appeal from a final decision of a district court of the United States...in any civil action arising under...any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). Thus, the Federal Circuit's rulings on patent law are binding on this Court.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.

Plaintiff alleges that Comcast has directly infringed[5] and continues to directly infringe on *all claims*[6] of the '431 Patent,

---

[5] "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." Akamai Techs. Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed Cir. 2015) (en banc).

[6] There are 45 claims in the '431 Patent. (Doc. #30-1, p. 1.)

including both the independent and dependent claims.  See 35 U.S.C. §§ 271 et seq.  Plaintiff states that the X1 Platform reads on all the limitations set forth in the patented claims of the '431 Patent.  As for exemplary independent Claim 1 of the '431 Patent for a "content manager device" which is at issue in the Motion to Dismiss, plaintiff alleges that Comcast directly infringed on that claim by making, using, offering for sale, and selling the X1 Platform.  The independent Claim 1 recites:

> I claim:
> 1. A content manager device comprising:
> a server resident on a network containing descriptive program data about video content available from one or more multiple cable system operators (MSOs) and one or more non-MSOs;
> a device capable of establishing and maintaining a connection with the network via a communications link; and
> an interactive program guide application installed on the device that provides user-configurable interactive program guide (IPG) listing at least one channel of video content available from each of the one or more MSOs and each of the one or more non-MSOs and descriptive program data from the server for the video content available on each of the channels, wherein each of the channels is selectable for receiving only or virtually entirely streaming video programming from its respective MSO or non-MSO source via the communications link and the network; wherein the server is distinct from at least one of the one or more MSOs and one or more non-MSOs, and wherein the application allows for the IPG to be configured by a user with respect to adding or deleting channels from any of the one or more MSOs or the one or more non-MSOs.

(Doc. #30-1, p. 19.) Plaintiff alleges that the X1 Platform is a "content manager device" that comprises all the claims limitations set forth in Claim 1, infringing on Claim 1. (Doc. #30, ¶¶ 43-49, 50-53, 55.) Plaintiff also alleges that the X1 Platform directly infringes the dependent claims of the '431 Patent that are not at issue here. (Doc. #30, ¶ 56.)

Defendant argues three grounds on which the Amended Complaint fails to plausibly allege direct infringement: (1) that Comcast's device provides an application that allows an interactive program guide to be configured by a user with respect to adding or deleting channels; (2) that one or more of Comcast's servers is "distinct" from Comcast; and (3) that each of the channels in the program guide is selectable for receiving only or virtually entirely streaming video programming from its respective MSO or non-MSO source.[7] (Doc. #36.) Without more information, Comcast argues, it has insufficient notice of the claims against it.

To state a claim for patent infringement, a complaint must include five factual assertions: (1) ownership of the patent; (2) name of each defendant; (3) cite the patent allegedly infringed; (4) state how the defendant allegedly infringes; and (5) point to the sections of the patent law invoked. <u>Hall v. Bed Bath & Beyond, Inc.</u>, 705 F.3d 1357, 1362 (Fed. Cir. 2013). Plaintiff need not prove its case at the pleading stage, but need only place the potential infringer on notice of what activity it is accused of infringing. <u>Nalco</u>, 883 F.3d at 1350. "[A] patent infringement suit is not required to specifically include each element of the

---

[7] Formerly known as a "multi system operator" or "MSO" but now often referred to under different names such as, for example, a "multichannel video programming distributor." (Doc. #30, ¶ 22.)

claims of the asserted patent." K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013).

**A. Adding or Deleting Channels**

Comcast first argues that the Amended Complaint fails to allege any facts demonstrating that a user can configure the alleged Xfinity program guide to add or delete channels. Claim 1 requires that the recited "content manager device" include "an interactive program guide application" that "allows for the IPG to be configured by a user with respect to adding or deleting channels from any of the one or more MSOs or the one or more non-MSOs. . . ." (Doc. #30-1, p. 19.) Comcast states that the Amended Complaint merely parrots this language and provides screenshots but fails to provide factual support for the allegation that a user can add or delete any channel from the program guide. Comcast explains that the screenshots merely show that Comcast subscribers can pay more money to watch more channels by adding TV and premium channels to their current service or Xfinity TV package.

The Court finds that plaintiff has plausibly alleged that the Xfinity platform provides a user-configurable interactive program guide that allows users to add or delete channels. (Doc. #30, ¶ 55.) The Amended Complaint alleges that the IPG allows users to add or delete channels and add or delete favorite channels, also providing screenshots. This is adequate to place Comcast on notice of what activity it is accused of infringing. It is not

appropriate for the Court to determine at this stage whether the accused method of adding or deleting channels could violate the '431 Patent without the benefit of claim construction. Thus, the motion to dismiss on this basis is denied.

**B. Distinct Server Limitation**

Comcast next argues that the Amended Complaint does not allege facts supporting the charge that "one or more servers" of Comcast's X1 Platform are "distinct" from Comcast - the supposed MSO of the claims. Claim 1 requires that the content manager device include a server that holds descriptive information about video content and this server be distinct from an MSO. (Doc. #30-1, p. 19.) Comcast argues that its server cannot be distinct from it. In this regard, the Amended Complaint states:

> Comcast's Xfinity X1 Platform comprises numerous servers that are resident on a network and are used for facilitating the delivery of video content from one or more MSOs and one or more non-MSOs. At least one of the servers made available by Comcast contains descriptive program data about the video content available from the one or more of the MSOs and the one or more of the non-MSOs. The Xfinity X1 Platform includes at least one server that contains descriptive programming data about video content available from the one or more non-MSOs, including, for example video content made available from Netflix, YouTube, or other non-MSOs, and descriptive programming data about video content available from the one or more MSO's, including, for example, video content delivered by Comcast itself. The server containing such descriptive program data is distinct from at least one of the one or more MSOs (e.g., at least one or more of the Comcast servers) and one or more non-MSOs (<u>e.g.</u>, at least one or more of the non-MSO servers delivering, for example, Netflix, YouTube, or other non-MSO video content).

(Doc. #30, ¶ 51.)

Plaintiff responds that Comcast's argument relies on many flawed claim language interpretations, including an erroneous understanding of the words "server", "resident", and "one or more multiple cable system operators (MSOs)", and "non-MSOs", among other terms and phrases. In any event, plaintiff states that nothing in the '431 Patent or the prosecution history suggests that an MSO is a server, as Comcast implies. Plaintiff states that at this point it has no idea about the specific location, type, and operation of the hardware and software used by Comcast to implement its servers described in Claim 1, which it may learn through discovery.

The Court finds that WhereverTV has plausibly alleged facts supporting that Comcast's X1 Platform includes at least one server that is resident on a network containing descriptive program data about video content that is available form one or more MSOs and one or more non-MSOs, and that this server is distinct from at least one or more of the MSOs and one or more non-MSOs, as contemplated in Claim 1. Details about the operation of the servers may be obtained through discovery, but at this point plaintiff need not allege specific facts about the technical details of the accused products. Thus, the motion to dismiss on this basis is denied.

**C. Streaming Video**

Finally, Comcast argues that the Amended Complaint fails to support the claim limitation that "each of the channels is selectable for receiving only or virtually entirely streaming video programming from its respective MSO or non-MSO source." (Doc. #30-1, p. 19.) Comcast states that Claim 1 requires that each channel is selectable for receiving "only or virtually entirely streaming video programming" as opposed to broadcasting for example, from its respective MSO or non-MSO source. Other than repeating the claim language itself, Comcast asserts that WhereverTV merely alleges that "[t]he Xfinity X1 Platform facilitates the delivery of streaming video content to users in a 'lean back'[8] fashion." (Doc. #30, ¶ 54.) Comcast states there are no plausible facts that the accused device meets this claim limitation.

The Court agrees with plaintiff that it has plausibly alleged that the X1 Platform practices the limitation that each channel is selectable for receiving only or virtually entirely streaming video programming from its respective MSO or non-MSO source. See Doc. #30, ¶¶ 25, 26, 30, 33, 39, 50, 54, and accompanying

---

[8] According to the patent, a "lean back system" is "characterized by the use of a remote-control device" as opposed to a more interactive "lean forward system" where "the user is performing some task through the use of a mouse or keyboard." (Doc. #30-1, p. 12.)

screenshots. Comcast's argument is more like a claim construction and non-infringement argument, rather than a pleading requirement. Thus, the motion to dismiss on this basis is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Doc. #36) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __20th__ day of February, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record