UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WHEREVERTV, INC.,

       Plaintiff,

v.

COMCAST CABLE
COMMUNICATIONS, LLC,

       Defendant.

Case No:  2:18-cv-529-JLB-NPM

---

## **ORDER**

Plaintiff WhereverTV, Inc. ("WTV") has sued Defendant Comcast Cable Communications, LLC ("Comcast"), alleging that Comcast's Xfinity X1 Platform infringes on a patent owned by WTV, U.S. Patent No. 8,656,431 B2, titled "Global Interactive Program Guide Application and Device" ("the '431 Patent").  (See Doc. 30; Doc. 30-1.)  Before the Court is Comcast's Motion for Summary Judgment of Non-Infringement.  (Doc. 224.)  After careful consideration of the briefs and exhibits submitted by counsel, the Court has determined that a supplemental evidentiary hearing is required to clarify one of the disputed limitations in WTV's patent. Because Comcast's Motion for Summary Judgment (Doc. 224) is predicated on Comcast's interpretation of the November 13, 2020 Claim Construction Order (Doc. 172), which construes this disputed limitation, Comcast's Motion for Summary Judgment is **DENIED**.  Comcast will be permitted to refile its Motion after the Court has construed the distinct server limitation.

## Background

WTV is a "television service provider that offers live-streaming video content" using a "wide range of internet enabled devices." (Doc. 30 at ¶ 11.)  WTV is the assignee and owner of the '431 Patent. (Doc. 30-1.)  The '431 Patent discloses a system and device "that employs a global interactive program guide to receive, access, manage, and view digital entertainment services such as live television, television on demand, and pre-recorded video and audio programming." (Id. at 1.)

Critically, the user can access video content both from internet and cable companies, like TimeWarner or Cox Cable, as well as independent content distributors, such as Showtime or the NBA. (Id. at 7, 16.)  The '431 Patent states "[t]he goal is to shift the control of content availability, organization, and access from MSO's [multi system operators], which is today's cable television model, to a new user-centric where the user can choose whether or not to purchase content from a content consolidator or directly from independent content providers." (Id. at 14.) The text of Claim 1, the asserted independent claim, reads in full:

1.  a content manager device comprising:

    a server resident on a network containing descriptive program data about the video content available from one or more multiple cable system operators (MSOs) and one or more non-MSOs;

    a device capable of establishing and maintaining a connection with a network via a communications link; and

    an interactive program guide application installed on the device that provides user-configurable interactive program guide (IPG) listing at least one channel of video content available from each of the one or more MSOs and each of the one or more non-MSOs and descriptive program

data from the server for the video content available on each of the channels, wherein each of the channels is selectable for receiving only or virtually entirely streaming video programming from its respective MSO or non-MSO source via the communications link and the network;

wherein the server is distinct from at least one of the one or more MSOs and one or more non-MSOs; wherein the application allows for the IPG to be configured by a user with respect to adding or deleting channels from any of the one or more MSOs or the one or more non-MSOs.

(Id. at 20.)

Comcast, which is one of the largest cable television and internet providers in the United States, sells an entertainment platform known as the Xfinity X1 Platform ("X1"). (Doc. 30 at ¶ 24.) Per WTV's expert, the X1 is "Comcast's premier cable service" and it "works the same way" as the claimed invention. (Doc S-230-1 at ¶¶ 115, 309.) Similar to the '431 Patent, the X1 includes a "cloud-based service and protocol" that permits users to access video content from a cable operator or video content provider and to browse descriptive program data about that video. (Id. at ¶¶ 105, 181, 187.) The device also supports an interactive programming guide that "allows for searching, managing, selecting, and receiving video programming." (Id. at ¶ 170.)

In 2018, WTV filed suit in this Court arguing that Comcast has "directly infringed and continues to directly infringe all the claims of the '431 Patent by "making, using, offering for sale, and selling the Xfinity X1 Platform." (Doc. 30 at ¶¶ 47, 48.) A lengthy procedural history has since followed, effectively distilling the issue of Comcast's alleged infringement to one limitation in WTV's Claim, the distinct server limitation. This limitation provides that the platform's server be

3

"<u>distinct</u> from at least one of the one or more MSOs and one or more non-MSOs."
(Doc. 30-1 at 20) (emphasis added).

Comcast now moves for summary judgment of non-infringement, arguing
that because Comcast is the only MSO on the X1, and the X1's server only displays
descriptive program data about video content available from Comcast, it is
undisputed that the X1's server is not distinct from Comcast.  (Doc. 224 at 19–22.)
WTV has responded that Comcast misunderstands the meaning of "distinct," and
Comcast has replied that in fact it is WTV that is offering "tortured argument[s]"
about the disputed claim language.  (Doc. 246 at 6; Doc. 256 at 7.)

## Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers
to interrogatories, affidavits, and admissions on file demonstrate that there is no
genuine issue as to any material fact and that the moving party is entitled to
judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).
"An issue of fact is 'material' if, under the applicable substantive law, it might affect
the outcome of the case," and it is "'genuine' if the record taken as a whole could
lead a rational trier of fact to find for the nonmoving party."  <u>Hickson Corp. v. N.</u>
<u>Crossarm Co.</u>, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  All the evidence, as well as
factual inferences reasonably drawn from the evidence, must be viewed in the light
most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,
157–59 (1970).  The Court will not weigh the evidence or make findings of fact.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  Instead, the Court plays

the limited role of determining whether there is sufficient evidence upon which a

reasonable trier of fact could find for the non-moving party.  Id.

## Discussion

The analysis of patent infringement is a two-step process.  "[F]irst, the scope

of the claims are determined as a matter of law," and second, provided the claims

are properly construed, the "claims are compared to the allegedly infringing device

to determine, as a matter of fact, whether all of the limitations of at least one claim

are present, either literally or by a substantial equivalent, in the accused device."

Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002).  Though

the second step is a question of fact, "it is amenable to summary judgment where,

inter alia, no reasonable fact finder could find infringement."  Ethicon Endo-

Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation

omitted).  But given that "infringement is itself a fact issue, a district court must

approach a motion for summary judgment of infringement or non-infringement with

a care proportioned to the likelihood of its being inappropriate."  SRI Int'l v.

Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

"The construction of a patent, including terms of art within its claim, is

exclusively within the province of the court."  Markman v. Westview Instrs., Inc.,

517 U.S. 370, 372 (1996).  Indeed, it is "the judicial statement of what is and is not

covered by the technical terms and other words of the claims."  Netword, LLC v.

Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001).  Before reaching any

determination on the issue of infringement, therefore, the Court must construe the

patent's claim limitations to define the invention.  Innova/Pure Water, Inc. v. Safari

Water Filtration Sys., Inc., 381 F.3d 1111, 1115–16 (Fed. Cir. 2004).

On June 12, 2020, the previously assigned United States District Judge held

a Markman hearing to construct the claims in the '431 Patent.  (See Doc. 165.)

After consideration of the parties' arguments and submissions, the Court issued an

order making seven constructions.  (See Doc. 172.)  One of the disputed limitations

was: "wherein the server is distinct from at least one of the one or more MSOs and

one or more non-MSOs."  (Doc. 30-1 at 20; Doc. 172 at 6.)  The Court declined to

adopt either WTV's or Comcast's proposed construction of this limitation and

instead deemed that no construction was necessary beyond the language of the

claim as it was originally written.  (Doc. 172 at 6.)  At the time, the Markman order

appeared to effectively harmonize the parties' competing constructions.  But, as

Comcast's Motion for Summary Judgment and WTV's Response make clear, this

construction was not a workable compromise.

Comcast now argues that the "requirement that the program data server be

distinct from an MSO ensures that the MSO cannot control content availability,

organization, and access."  (Doc. 224 at 5.)  WTV responds that "a server that does

not provide video programming is distinct from an MSO and non-MSO that do."

(Doc. 246 at 5.)  As the parties' pleadings make clear, "distinct" lends itself to

competing interpretations in the context of the distinct server limitation.

Specifically, the X1's server is not distinct from the MSO because the content shown

on the server is dictated by the MSO.  Or the X1's server is distinct from the MSO

because the server only displays data describing the content, not the content itself.
(Doc. 224 at 22; Doc. 246 at 2.)  As the Court can best glean at this juncture, this
indeterminacy is troublesome because the definition of "distinct from" is dispositive
of the infringement alleged.

Given the parties' fundamental disagreements about the meaning of the
Court's prior construction of the term "distinct," revisiting claim construction is
necessary.  See Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1377 (Fed.
Cir. 2005) ("[D]istrict courts may engage in rolling claim construction, in which the
court revisits and alters its interpretation of the claim terms as its understanding of
the technology evolves.") (quotation omitted).  "This is particularly true where
issues involved are complex, either due to the nature of the technology or because
the meaning of the claims is unclear from the intrinsic evidence."  Jack Guttman,
Inc. v. Kopykake Enterprises, Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002).

As the parties were previously notified by Judge Corrigan, the Court has an
interest in revisiting portions of the Markman Order if the claim constructions
posited by the Court later proved unworkable.  (See Doc. 165 at 145–46.)  This is
exactly what has occurred here—both parties are operating under their proposed
constructions of "distinct," which, as outlined above, are irreconcilable for the
purposes of determining infringement.  Accordingly, the Court will be noticing a
supplemental evidentiary hearing to discern the meaning of "distinct from" within
the context of the distinct server limitation: "wherein the server is distinct from at
least one of the one or more MSOs and one or more non-MSOs."  (Doc. 30-1 at 20.)

The Court encourages the parties to construe the disputed limitation with particular attention to the phrase "distinct from," which lends itself to less constructive ambiguity than the term "distinct."  It seems that much of the confusion about the distinct server limitation is premised on the relationship between the servers which power the X1's search function and provide descriptions of available video content, and the video delivery system which receives and broadcasts channels of video content to the X1's user.

As best the Court can discern, WTV believes that the Court should be focusing on the physical separateness between the component parts of the X1's equipment, while Comcast suggests that the Court take a more holistic view of the X1 device.  Specifically, Comcast encourages the Court to concentrate on the fact that the descriptions and search results revealed to users by the X1's servers are, by definition, predetermined by the content available on Comcast's video delivery system.  The Court therefore requests the parties to focus on the nature of the relationship at issue in the distinct server limitation by answering whether "distinct from" should be understood through the prism of physical connexity, as WTV suggests, or content-based linkages, as Comcast posits.

Because Comcast's Motion for Summary Judgment is premised on its interpretation of the November 13, 2020 Claim Construction Order (Doc. 172), the Motion is due to be denied, but Comcast will be permitted the opportunity to refile its Motion.  See Viiv Healthcare Co. v. Gilead Sci., Inc., 437 F. Supp. 3d 395 (D. Del. 2020) (scheduling an evidentiary hearing in order to clarify a disputed limitation

and denying the parties' motions for judgment on the pleadings because their

arguments were premised on that disputed limitation); Network Commerce, Inc. v.

Microsoft Corp., 422 F.3d 1353, 1358 n.4 (Fed Cir. 2005) (approving a district court's

clarification of its claim construction order on summary judgment); Pressure Prod.

Med. Supplies, Inc. v. Greatbatch Ltd., 599 F.3d 1308, 1315 (Fed. Cir. 2010) (finding

revision of claim construction permissible because "the district court made the

adjustment early enough" to give the defendant "an opportunity to consider the new

construction and adjust its arguments to account for the change").

**CONCLUSION**

For the reasons above, it is **ORDERED**:

1.  Comcast's Motion for Summary Judgment (Doc. 224) is **DENIED**
    **without prejudice**.  Comcast will be permitted to refile its Motion for
    Summary Judgment after the Court has re-construed the disputed
    limitation.

2.  The Court will convene a supplemental evidentiary hearing on the
    construction of the distinct server limitation via separate order.  The
    Court anticipates that the hearing will be held in June or July 2022.

**ORDERED** at Fort Myers, Florida, on April 20, 2022.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE