UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WHEREVERTV, INC.,

       Plaintiff,

v.                                                                     Case No:  2:18-cv-529-WJF-NPM

COMCAST CABLE
COMMUNICATIONS, LLC,

       Defendant.

_____/

## <u>ORDER</u>

Before the Court are Plaintiff WhereverTV Inc.'s ("WTV") nine Motions in Limine, (Doc. 341), Defendant Comcast Cable Communications LLC's ("Comcast") seven Motions in Limine (Doc. 342), and Comcast's and WTV's respective responses (Doc. 357; Doc. 360).[1]  The Court assumes the parties' familiarity with the facts and procedural history of this case.  Decisions on these Motions in Limine are subject to revision based on the evidence at trial, which is scheduled to begin on April 19, 2023. Upon careful consideration, WTV and Comcast's Motions (Doc. 341; Doc. 342) are granted-in-part and denied-in-part.

---

[1] Certain portions of Comcast's Motions in Limine were filed under seal (*see* Doc. 343) because they contain confidential business information regarding Comcast licenses and non-public financial data.  *See* Doc. 338 at 4.

## LEGAL STANDARD

"We use the term [in limine] in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984). "Motions in limine should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment." *Holder v. Anderson*, No. 3:16-CV-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018); *see also Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (explaining that "admissibility questions should be ruled upon as they arise at trial.  Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context.").  "The [C]ourt excludes evidence on a Motion in Limine only if the evidence is clearly inadmissible for any purpose." *Royal Marco Point 1 Condo. Ass'n v. QBE Ins. Corp.*, No. 2:07-CV-16-FTM-99SPC, 2011 WL 470561, at *2 (M.D. Fla. Feb. 2, 2011).

Furthermore, relief sought within a motion in limine that is not supported by citation to the law is not in compliance with the Local Rules for the Middle District of Florida and may be denied for that reason alone.  *Reese v. Herbert*, 527 F.3d

1253, 1264 (11th Cir. 2008); M.D. Fla. R. 3.01(a).  In light of the preliminary or

preemptive nature of the motions in limine, "any party may seek reconsideration at

trial in light of the evidence actually presented and shall make contemporaneous

objections when evidence is elicited."  *Miller ex rel. Miller v. Ford Motor Co.*, No.

2:01-CV-545-FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004).

## DISCUSSION

The Court first considers WTV's nine Motions before turning to Comcast's

seven Motions.

### A. WTV's Motions in Limine

### I.    WTV's Motion to Exclude Any Fact Witness Comcast Refuses to Make Available During WTV's Case-in-Chief is GRANTED by mutual agreement of the parties.

In its first Motion in Limine, WTV moves to exclude Comcast's live

witnesses, which Comcast purportedly "refuse[d] to make . . .  available to WTV

during its case."  Doc. 341 at 4.  Comcast has since explicitly agreed to make its

live witnesses available during WTV's case-in-chief, as is required by law.  Doc.

357 at 8; *see Vera v. Berkshire Life Ins. Co. of Am.,* No. 19-61360-CIV, 2021 WL

7542934, at *2 (S.D. Fla. June 28, 2021) (holding that "any witnesses that

Defendant calls or intends to call at trial shall be made available to Plaintiff in her

case in chief"); *see also Chiles v. Novartis Pharm. Corp.*, No. 3:06-cv-96-J-25JBT,

2013 WL 12157928, at *1 (M.D. Fla. Feb. 15, 2013) (holding that it is "elementary

that a witness that will appear at trial for a defendant cannot refuse to appear during plaintiff's case in chief").  Accordingly, based on Comcast's representations, WTV's Motion to Exclude Any Fact Witness Comcast Refuses to Make Available During WTV's Case-in-Chief is GRANTED by mutual agreement of the parties.

## II.     WTV's Motion to Overrule Comcast's Objections to Its Own Documents Under Rule 602 and for Lack of Sponsoring Witnesses is TAKEN UNDER CONSIDERATION.

WTV next moves to prevent Comcast from objecting to WTV's proposed introduction of "hundreds of exhibits that no fact witness can speak to and no expert considered" under Federal Rule of Evidence 602.  Doc. 341 at 6; Doc. 357 at 10.  WTV asserts that any objection to the introduction of these documents based on the lack of a sponsoring witness must be overruled given the lack of support for such an objection in the Federal Rules of Evidence.  The Court agrees.  While Articles IX and X of the Federal Rules of Evidence pertain to documentary evidence, Article VI of the Federal Rules of Evidence pertains to witnesses.  Federal Rule of Evidence 602 provides in its entirety:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony.  This rule does not apply to a witness's expert testimony under Rule 703.

The plain text of Rule 602 indicates clearly that the Rule does not apply to the

admissibility of documents and thus cannot serve as a basis upon which the introduction of documentary evidence may be excluded at trial.

That being said, the Court hears Comcast's concerns regarding the introduction of excessive exhibits that would only serve to "confuse the issues and mislead the jury."  Doc. 357 at 10.  The Court will not entertain a barrage of superfluous documents, and Comcast is welcome to object to the introduction of any document it finds to be improper under the appropriate Federal Rule(s) of Evidence.  The parties may bring this matter to the Court for consideration depending on the records presented. *See generally*, Fed. R. Evid. 803(6) & 902(11).

### III.   WTV's Motion to Exclude Testimony from Late-Disclosed Witness John McCann is DENIED.

WTV next asks the Court to exclude testimony of Comcast's witness John McCann, a senior engineer at Comcast designated to testify to the design and operation of the X1 platform, because Comcast's disclosure of Mr. McCann was purportedly untimely.  Doc. 341 at 8.

While WTV may take issue with the strategic moves Comcast has made with respect to disclosure, WTV has not pointed to any conduct by Comcast that is categorically in violation of the Federal Rules of Civil Procedure.  To be sure, Rule 26(a)(1)(A)(i) provides that, in its initial disclosures, a party must provide to the other party the name, address, and telephone number of "each individual likely to

have discoverable information" and "the subjects of that information."  Under Rule

37(c)(1), "[i]f a party fails to provide information or identify a witness as required

by Rule 26(a) . . . the party is not allowed to use that information or witness to

supply evidence on a motion . . . unless the failure was substantially justified or is

harmless."  Neither of these rules contains an explicit bar on disclosing persons

with knowledge on the last day of discovery.

Furthermore, the cases cited by WTV to support the argument that Rule

26(a) disclosures made on the last day of discovery are necessarily untimely are

primarily persuasive authorities from outside of the Eleventh Circuit. Those that

are from this Circuit are not on point.  For example, *Jones v. Aaron's, Inc.*, 748 F.

App'x 907, 914 (11th Cir. 2018), deals with depositions taken on the very last day

of discovery and excluded by the court at the *summary judgment* stage.  That

situation is not analogous to the one presently before the Court; summary judgment

rulings are made on closed factual records, whereas WTV will have the

opportunity to cross examine Mr. McCann and elicit additional live testimony at

trial.  Additionally, *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions,*

*LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012), *aff'd*, 505 F. App'x 928 (11th

Cir. 2013), deals with expert witness reports, not fact witnesses, and is therefore

distinguishable.

And while WTV has pointed to case law cautioning against eleventh hour

witness disclosures, *see, e.g.*, *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, 8:17-cv-2422-T-27CPT, 2019 WL 5887171, at *2–3 (M.D. Fla. Nov. 12, 2019), it is not entirely clear that Comcast's disclosure of Mr. McCann was truly at the "eleventh hour."  By its own admission, WTV knew of Mr. McCann as far back as February 1, 2021.  *See* Doc. 179; Doc. 341 at 10.  On March 1, 2021, WTV sent Comcast deposition notices for a number of current and former Comcast employees, including Mr. McCann.  Doc. 357-7 at 7.  And in an email sent on March 4, 2021, counsel for WTV stated that "[Mr.] McCann is a relevant witness.  According to his LinkedIn page, he oversees software development for the X1 client applications."  *Id.*  at 2.  Eight days later, Comcast stated that it would be willing to make Mr. McCann available for deposition "if necessary."  Doc. 257-8 at 2.  On April 19, 2021, however, WTV withdrew its deposition notice for Mr. McCann. *See* Doc. 341 at 11; Doc. 341-1 at 62.  And it appears from the email exchange preceding WTV's withdrawal of this deposition notice that Comcast was prepared for Mr. McCann's deposition, as counsel for Comcast reached out to counsel for WTV requesting a Zoom link for Mr. McCann's deposition that was set to be taken the next day.  *See* 341-1 at 62.

WTV's argument that Comcast's disclosure of Mr. McCann as a fact witness was a last-minute surprise is hard to reconcile with the above emails and WTV's own telling of its familiarity with Mr. McCann's role in the development of the X1

dating back to 2019.  Thus, given that Comcast has not shown "bad faith" in its disclosure of Mr. McCann as a fact witness, the "severe sanction" of excluding him from trial is unwarranted here.  *See Howard v. Hartford Life & Accident Ins. Co.*, No. 10-cv-192, 2011 WL 13295386, at *6 (M.D. Fla. Dec. 16, 2011) (allowing witness who was disclosed two weeks after the close of discovery to testify at trial).  WTV's Motion to Exclude Testimony from Late-Disclosed Witness John McCann is therefore DENIED.

### IV.    WTV's Motion to Exclude Invalidity Theories Not Expressly Disclosed in Dr. Terveen's Expert Report, and Irrelevant and Confusing Prior Art References is DENIED.

WTV asks the Court to "exclude the prior art references that are not expressly incorporated in [Prof.] Terveen's anticipation and obviousness opinions because they are likely to confuse the jury and would allow Comcast to smuggle new invalidity theories into trial."  Doc. 341 at 20.  But nowhere has Prof. Terveen indicated that he will include in his discussion of the prior art any patents that were not explicitly mentioned in his report or explicitly mentioned in the cited references of the '431 Patent itself.  As Comcast notes, "of the 93 patents and patent applications listed in Comcast's notice, 78 are the 'References Cited' in the '431 Patent itself.  Of the remaining 15 patents and patent applications, one is the '431 Patent and the other 14 are expressly cited in Prof. Terveen's invalidity report."  Doc. 357 at 21.

WTV has shown no basis for excluding these 78 "References Cited" patents as they are listed in the first three pages of the '431 Patent, which the parties have agreed to include in their Joint Exhibit List. *See* Doc. 350-3 at 2; Doc. 246-3 at 2–3; *see Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-980-JRG, 2018 WL 10638138, at *4 (E.D. Tex. Apr. 26, 2018) (denying motion in limine seeking to preclude patentee "from presenting arguments that the patentee overcame a prior art reference listed on the face of an asserted patent" because copies of the patent would be provided to the jury). Accordingly, WTV's Motion to Exclude Invalidity Theories Not Expressly Disclosed in Dr. Terveen's Expert Report, and Irrelevant and Confusing Prior Art References is DENIED.

## V. WTV's Motion to Exclude Claim Construction and Prosecution History Evidence is GRANTED by mutual agreement of the parties.

Next, WTV moves to prevent Comcast from introducing evidence and argument regarding the claim construction and prosecution history of the '431 Patent. Doc. 341 at 22–23. Comcast has since agreed that it will not argue claim construction to the jury and that it will rely on the Court's claim constructions in its case. *See* Doc. 357 at 22–24. The Court fully anticipates that Comcast will adhere to this agreement. To the extent that Comcast elicits testimony from Prof. Terveen inviting the jury to reconstruct the distinct server limitation, the Court will gladly entertain contemporaneous objections and/or arguments on cross examination from WTV. *See Zimmer Tech., Inc. v. Howmedica Osteonics Corp.*, No. 02-CV-425,

2008 WL 11504958, at *2 (N.D. Ind. Nov. 25, 2008); *Corning Inc. v. SRV Biosystems, C.A.*, No. 03-633, 2005 WL 2465900, at *2 (D. Del. Oct. 5, 2005).

Comcast has also asserted that it will not argue prosecution history estoppel to the jury. *See* Doc. 357 at 22. The Court is confident that Comcast will adhere to its stated plan and follow Federal Circuit precedent. *See Festo Corp. v. Shoketsu Kinzoku Kabushiki Co.*, 344 F.3d 1359, 1367–68 (Fed. Cir. 2003) ("We have stated on numerous occasions that whether prosecution history estoppel applies . . . presents a question of law"). Because Comcast has asserted that it will not argue claim construction or prosecution history estoppel to the jury, WTV's Motion to Exclude Claim Construction and Prosecution History Evidence is GRANTED by mutual agreement of the parties.

## VI. WTV's Motion to Exclude Argument, Testimony, and Evidence on Irrelevant and Inflammatory Issues Concerning WTV's Affiliates and Witnesses is GRANTED.

WTV plans to call Ed Ciofani, the CEO of WTV, as a live witness and seeks to prevent Comcast from introducing evidence regarding Mr. Ciofani's "self-dealing" and violations of securities and auditing rules. Doc. 357 at 24; Doc. 341 at 23–24; Doc. 350-4 at 3. Federal Rule of Evidence 608(a) provides that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Nevertheless, this is a

10

case of alleged patent infringement to which Mr. Ciofani is not a party. The Court is hard-pressed to discern how information about Mr. Ciofani's dealings pertains to the question of direct infringement or any tangential concern. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (JGK), 2022 WL 16901995, at *6 (S.D.N.Y. Nov. 11, 2022) (citing Fed. R. Evid. 403) (excluding evidence regarding a party's alleged misappropriation of funds because, while "the strategic value to [plaintiff] of connecting [the party] to those inflammatory allegations [wa]s clear[,]" the relevance of such evidence was "substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury and wasting time").

The Court therefore finds that evidence regarding Mr. Ciofani's alleged misdeeds would significantly outweigh their minimal probative value with respect to the underlying issues of the trial. *See Bluestarexpo, Inc. v. Enis*, No. 21-20875-CIV, 2022 WL 16835934, at *15 (S.D. Fla. Nov. 9, 2022) (finding that "the danger of unfair prejudice outweighs whatever minimal (if any) probative value evidence of [a party]'s discovery violations may have") And Federal Rule of Evidence 403 does not contemplate the admission of such irrelevant and prejudicial material. *See Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) ("Rule 403's major function is limited to excluding matter of scant or cumulative

probative force, dragged in by the heels for the sake of its prejudicial effect.") (internal quotes omitted).

For these reasons, WTV's Motion to Exclude Argument, Testimony, and Evidence on Irrelevant and Inflammatory Issues Concerning WTV's Affiliates and Witnesses is GRANTED. WTV should be cautious not to "open the door" that the Court here has shut.

### VII. WTV's Motion to Exclude Argument, Testimony, and Evidence on WTV's Application to the European Patent Office is DENIED WITHOUT PREJUDICE.

WTV next asks the Court to prevent the introduction of evidence of its application to the European Patent Office ("EPO"). Doc. 341 at 25–26. Citing *Heidelberger Druckmaschinen AG v. Hatscho Commercial Products, Inc.*, 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994), WTV argues that "[t]he Federal Circuit has made plain that foreign patent proceedings are irrelevant to the validity of U.S. patents." Doc. 341 at 25. But *Heidelberger* does not stand for this proposition. Instead, the Federal Circuit took issue with the *weight* that the district court placed on the European examiner's rejection of the Plaintiff's patent application before the EPO. *Heidelberger*, 21 F.3d at 1072 n.2. The Federal Circuit explained that "[c]aution is required when applying the action of a foreign patent examiner to deciding whether the requirements of 35 U.S.C. § 103 are met under United States law, for international uniformity in theory and practice has not been achieved." *Id.*

Here, as best the Court understands, Comcast intends to introduce evidence regarding the representations made by WTV to the EPO when disclosing "IPG" and "customization," not any decision made by EPO with respect to those representations.  *See* Doc. 357 at 24–25.  Accordingly, the cautionary language in *Heidelberger* regarding the weight that should be afforded to foreign patent offices' decisions is not on point.

Furthermore, the case law is clear that "[t]he Federal Circuit does not endorse the *per se* exclusion of evidence related to foreign patent prosecutions." *See Pfizer Inc. v. Ranbaxy Lab'ys Ltd.*, No. Civ.A. 03-209-JJF, 2005 WL 3525681, at *3 (D. Del Dec. 22, 2005).  On a number of occasions, the Federal Circuit has found that representations made to foreign patent offices may be relevant and admissible.  *See e.g.*, *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983) (explaining that "representation[s] to foreign patent offices should be considered . . . when [they] comprise relevant evidence"); *Tanabe Seiyaku Co., Ltd. v. U.S. Intern. Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997) (finding that party's "representations made to the foreign patent office [were] relevant to determine whether a person skilled in the art would consider" certain organic compounds to be "interchangeable with the claimed solvents").

Accordingly, the Court finds that WTV's Motion to Exclude Argument, Testimony, and Evidence on WTV's Application to the European Patent Office is

DENIED WITHOUT PREJUDICE to reconsideration of a contemporaneous

objection.

### VIII.  WTV's Motion to Exclude Inflammatory References to WTV or its Parent as a "Shell Company" or "Shell Corporation" is DENIED WITHOUT PREJUDICE.

WTV next moves this Court to exclude references to WTV or its parent

company as a "shell company" or "shell corporation." Whether or not WTV's

parent company is a shell company or shell corporation is a factual matter that is

disputed by the parties.  *See* Doc. 341 at 26–27; Doc. 357 at 26–27.  It would

therefore be improper for the Court to put a finger on the scale and preclude

Comcast from making such references.  While the Court is sensitive to the

pejorative nature of the terms "shell company" and "shell corporation," the Court

finds that challenges to the use of such terms would be best addressed via rebuttal,

cross examination, or, if appropriate, objection.  *See DNT, LLC v. Sprint Spectrum,*

*LP*, No. CIV.A. 3:09CV21, 2010 WL 582164, at *5 (E.D. Va. Feb. 12, 2010)

(permitting the use of the term "shell company" provided that the term was found

to be an accurate description of plaintiff's business); *H&L Farms LLC v. Silicon*

*Ranch Corp.*, No. 4:21-CV-134 (CDL), 2023 WL 1795705, at *6 (M.D. Ga. Feb.

7, 2023) (deferring ruling on motion to prevent plaintiff from calling certain

defendants "shell companies" during the trial because "[i]f there is evidence that

any of the defendants is a shell corporation . . . then [p]laintiffs shall not be precluded from using the term 'shell company.'").

As such, WTV's Motion to Exclude Inflammatory References to WTV or its Parent as a "Shell Company" or "Shell Corporation" is DENIED WITHOUT PREJUDICE.  WTV may, however, renew this issue at trial along with evidence that these terms are inaccurate descriptions of its business.

### IX. WTV's Motion to Exclude Argument, Testimony, or Evidence that the Features or Functionality of WTV's Products Relates to Infringement or Invalidity is GRANTED by mutual agreement of the parties.

Finally, WTV asks the Court to "exclude argument, testimony, or evidence comparing WTV's products to the X1 Platform, or suggesting that WTV's products . . . define or limit the scope of the invention." Doc. 341 at 27.  Comcast has stated that it will not present evidence comparing the accused X1 Platform to any WhereverTV product for purposes of arguing non-infringement.  Doc. 357 at 27. Accordingly, WTV's Motion to Exclude Argument, Testimony, or Evidence that the Features or Functionality of WTV's Products Relates to Infringement or Invalidity is GRANTED by mutual agreement of the parties.

The Court is confident that both parties are in agreement that the claims of the patent itself—rather than the products manufactured by the patent owner— define the scope of the invention and that Comcast will not introduce any argument or evidence to the contrary.  *See Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d

1050, 1055 (Fed. Cir. 1989) ("The trial court correctly held that it must, in determining the fact of infringement, compare the defendant's product with the claims of the patent, not with the patentee's product").  Comcast may, however, introduce evidence with respect to WTV's product as it pertains to the calculation of damages, given that WTV's unsuccessful attempts to commercialize its technology may be relevant to the calculation of the reasonable royalty that the parties would have agreed to at a hypothetical negotiation.  *See Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067, 2015 WL 82052, at *1 (D. Del. Jan. 6, 2015) (permitting evidence that plaintiff "does not practice the patents-in-suit, which is relevant to damages").

**B. Comcast's Motions in Limine**

**I.    Comcast's Motion in Limine re: Inter Partes Review Proceedings is DENIED WITHOUT PREJUDICE.**

Comcast first moves to exclude any reference to Inter Partes Review ("IPR") proceedings related to WTV's patent, asserting that the issues raised during IPR proceedings are materially different than those that will be presented to the jury. *See* Doc. 342 at 9.  In 2019, Comcast filed two petitions for IPR of WTV's '431 Patent.  *See* Doc. 342-1; Doc. 342-2.  In 2020, the Patent Trial and Appeal Board ("PTAB") declined to institute the IPRs.  *See* Doc. 342-3; Doc. 342-4.  Comcast now worries that introduction of the IPR denials would allow the jury to improperly conclude that the '431 Patent must be valid, even though Comcast now

16

plans to raise different invalidity arguments than it did before the IPR.  *See* Doc. 342 at 12.

Comcast has not pointed the Court towards any rule stating that the PTAB record *must* be excluded from trial, even where the legal arguments raised before the PTAB and before the Court are discrete.  And unlike in the cases cited by Comcast to support the exclusion of the PTAB record, *see, e.g.*, *Milwaukee Electric Tool Corporation v. Snap-On Incorporated*, No. 14-CV-1296-JPS, 2017 WL 4570787, at *6 (E.D. Wis. Oct. 12, 2017), there is overlap here between the prior art referenced by Comcast in the IPR proceedings and the prior art upon which Comcast relied in anticipation of trial.  Specifically, four of the prior art references that Comcast now relies upon for its invalidity theories were presented to, and considered by, the PTAB.  Such overlap weighs in favor of the relevance and admissibility of the IPR proceedings.  *See Dentsply Sirona Inc. v. Edge Endo, LLC*, No. 1:17CV1041-JFB-SCY, 2020 WL 6392764, at *5 (D.N.M. Nov. 2, 2020) (denying motion to exclude evidence of IPR proceedings "to the extent that the defendants open the door by referencing at trial prior art that they had relied upon in the IPR") (internal quotes omitted).

WTV also submits that the IPR proceedings are substantially similar to the invalidity theories that Comcast will present to the jury; are relevant to impeach Comcast's expert, Dr. Terveen, who has endorsed prior art combinations that the

PTAB rejected; contextualize Comcast's evidence related to its alleged license with RPX; and form part of the prosecution history.  Doc. 360 at 5–6.  The Court therefore finds that, at this juncture, the IPR proceedings' probative value outweighs their potential for prejudicial impact.  *See StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 3824208, at *9 (M.D. Fla. June 19, 2015).  Furthermore, "[a]ny potential confusion can be addressed by appropriate jury instructions on the standard of proof applicable to patent invalidity defenses and counterclaims."  *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG, 2014 WL 8096334, at *7 (C.D. Cal. Apr. 21, 2014); *see also StoneEagle*, 2015 WL 3824208, at *9 ("The Court can and will instruct the jury on the appropriate law to apply to this case and can, if requested, further instruct the jury that different standards apply to these various proceedings.")

Accordingly, Comcast's Motion in Limine Seeking to Exclude the Record of the IPR proceedings is DENIED WITHOUT PREJUDICE. Comcast may reassert its concerns at trial if it believes that WTV is veering beyond this ruling or if WTV declines to reference the overlapping prior art giving rise to the inference of the relevance of the PTAB record.

## II.     Comcast's Motion in Limine re: Alleged Pre-Suit Interactions is DENIED.

Comcast next moves to preclude WTV from introducing any alleged pre-suit interactions between the parties, which Comcast asserts "risks leaving the highly prejudicial, false impression that Comcast knew about the patent and copied it." Doc. 342 at 13.  The Court disagrees.  WTV has represented that it intends to introduce evidence of pre-suit interactions in order to rebut arguments that Comcast may make about WTV's lack of commercial success, not to raise irrelevant issues of inducement or willfulness.  *See* Doc. 360 at 8.  WTV is well within its rights to introduce information to counter what it perceives to be an unfair portrait of its business operations.  *See Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004) ("This Circuit recognizes the concept of 'curative admissibility'—also called 'opening the door' or 'fighting fire with fire.'").  Given that the Court has, at this point, permitted Comcast to introduce argument that WTV is a "shell company" or "shell corporation," fairness requires allowing WTV to introduce evidence countering the notion that aspects of its corporate structure are suspicious.  *See Abrams v. Ciba Specialty Chems. Corp.*, No. CIV.A 08-0068-WS-B, 2010 WL 1141409, at *1 (S.D. Ala. Mar. 22, 2010) ("The parties will be permitted to tell their respective sides of the story to the jury.").

Thus, if Comcast seeks to portray WTV as a commercial failure, WTV may counter this portrayal with evidence of pre-suit interactions between WTV and Comcast or Comcast affiliates.  To the extent that Comcast takes issue with WTV's portrayal of its pre-suit interactions, it is free to present rebuttal evidence. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). Accordingly, Comcast's Motion in Limine re: Alleged Pre-Suit Interactions is DENIED.

### III.    Comcast's Motion in Limine re: Irrelevant and Prejudicial Financial Information is GRANTED.

Comcast also moves to preclude WTV from referencing Comcast's size or wealth.  Doc. 342 at 18.  Comcast notes, and the Court agrees, that it would be inappropriate for WTV's damages expert, Kyle Elam, to argue that Comcast's "deep pockets" are probative of the royalty that Comcast might have been willing to agree to in the hypothetical negotiation.  *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11538713, at *19 (E.D. Tex. Feb. 26, 2010) (finding that "to the extent Defendants only seek to exclude evidence of their financial size and wealth . . . any probative value is substantially outweighed by the danger that the jury might set damages based on Defendants' ability to pay rather than on proper evidence of damages").  Accordingly, Comcast's Motion in Limine re: Irrelevant and Prejudicial Financial Information is GRANTED.

20

Nevertheless, this Motion in Limine appears—inappropriately—to be more concerned with relitigating the issues addressed in WTV's damages expert's report, than addressing any sort of prejudicial conduct. *See Holder*, 2018 WL 4956757, at *1 (explaining that motions in limine should not "(re)-address[ ] substantive motions.") Thus, WTV is precluded from presenting argument, evidence, or testimony referencing Comcast's overall size and wealth to the extent that such argument, evidence, or testimony violates the constraints set forth in the Court's June 9, 2022, Order (*see* Doc. 285). *See ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-01112-JRG, 2015 WL 11089489, at *5 (E.D. Tex. Aug. 24, 2015). However, WTV is not precluded from seeking to introduce information about Comcast's financials to the extent that they are relevant and tied to the alleged infringement. If WTV wishes to introduce or argue such evidence, it should be reviewed by the Court outside of the jury's presence.

## IV.   Comcast's Motion in Limine re: Comcast's Syndication Agreement is DENIED.

Comcast next seeks to preclude WTV from referencing Comcast's X1 syndication agreements, which are the agreements under which Comcast provides the X1 Platform to other cable companies. Doc. 342 at 22–23. WTV counters that these syndication agreements provide relevant information for the calculation of running royalties insofar as a hypothetical agreement between Comcast and WTV

might include a right to sublicense the technology to other cable companies.  Doc.

360 at 18.

The Court agrees that these agreements are potentially germane to the

reasonable royalty calculation.  For example, in one of the sample syndication

agreements provided by Comcast, "the Provided X1 Service shall be comprised of

each feature, functionality and application generally deployed by Comcast and its

Affiliates to Comcast Subscribers from time to time during the Term as part of the

X1 Platform Service."  Doc. S-343-5 at 3.  Thus, to the extent that part of the X1's

functionality that was desirable to the cable companies with whom Comcast

negotiated the syndication agreements was the functionality attributable to the '431

Patent, the syndication agreements have a clearly "discernible link to the claimed

technology."  *See ResQNet.Com v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010)

(finding expert's opinion calculating damages based on "used licenses with no

relationship to the claimed invention" and no "discernible link to the claimed

technology" to be inadmissible.)

Because the syndication agreements have the potential to shed light on the

value of the '431 Patent to the X1, the Court finds that they are potentially

probative of the reasonable royalty and are therefore admissible.  Thus, Comcast's

Motion in Limine re: Comcast's Syndication Agreement is DENIED.

## V.   Comcast's Motion in Limine re: Prior Rovi Litigation is DENIED-IN-PART WITHOUT PREJUDICE.

Comcast next seeks to preclude WTV from referencing Comcast's prior litigation with Rovi Corporation and its affiliates.  Doc. 342 at 25.  According to Comcast, the Rovi litigation was so dissimilar to this case that to admit evidence or argument about it at trial would confuse the jury and prejudice Comcast.  *Id.* at 26.  WTV counters that "[t]he circumstances of the Rovi license . . . closely resemble those of the hypothetical negotiation."  Doc. 360 at 19.  And in his expert report, Mr. Elam has argued the same.

While Comcast may disagree with Mr. Elam's opinion, precluding the comparative analysis undertaken in his report is not the proper remedy for such disagreement.  As the Court noted in its September 4, 2022, Order (*see* Doc. 317), the "degree of comparability" of the license agreements is "best addressed by cross examination and not by exclusion."  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."); *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020) ("[T]he issue of comparability is often one of sufficiency of the evidence, not admissibility.").

The same rules apply to licenses, like the Rovi licenses at issue here, which were negotiated to settle a case after a court made a finding of infringement. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1337 (Fed. Cir. 2015) (finding that "[l]icenses negotiated to settle a case after a court has established validity and infringement of the patent are very probative of reasonable royalty. Such licenses duplicate the analytical process undertaken by the court in setting reasonable royalty damages in willing licensor-willing licensee fictional negotiation."). It is the "litigation matters" that trouble the Court, so prior to this subject being mentioned before the jury, the Court should be alerted and further resolution should be sought.

## VI.    Comcast's Motion in Limine re: Statutory Presumption of Validity is DENIED WITHOUT PREJUDICE.

Comcast also seeks to preclude WTV from referencing the presumption of patent validity, which it argues "has no probative value and risks confusing the issues." Doc. 342 at 29. But the presumption of patent validity is written explicitly into the Patent Act. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent on an invalid claim."). It strikes the Court as odd to preclude WTV from referencing a portion of the United States Code under which this

24

litigation was brought.  *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544(KAM)(GRB), 2019 WL 2330855, at *9 (E.D.N.Y. May 31, 2019) (deciding to instruct the jury on the presumption of validity because "as with the presumption of innocence in a criminal trial, it will be helpful and not at all confusing to a jury to understand *why* the particular party bears the burden of proof, and that the burden of proof is greater than a preponderance of the evidence."); *Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, No. 7:09-CV-29-O, 2011 WL 7575006, at *8 (N.D. Tex. June 10, 2011) (denying defendant's motion in limine to preclude reference to the statutory presumption of validity because "find[ing] that [defendant]'s contention that [plaintiff]'s reference to a patent's statutory presumption of validity is prejudicial is not well taken.").

Thus, at this juncture, the Court will not exclude references to the presumption of validity.  Comcast may, however, seek reconsideration on this issue at trial in light of the evidence actually presented.  *See Miller*, 2004 WL 4054843, at *1.  Accordingly, Comcast's Motion in Limine re: Statutory Presumption of Validity is DENIED WITHOUT PREJUDICE.

### VII.   Comcast's Motion in Limine re: Unproduced Trial Exhibits is GRANTED-IN-PART and DENIED-IN-PART.

Lastly, Comcast moves to exclude fifteen fact exhibits that WTV produced in January 2023—months after the deadlines for fact discovery, expert discovery, and supplemental expert reports (April 30, 2021, August 6, 2021, and October 5,

2022, respectively).  Doc. 342 at 30–31.  WTV argues that it did not produce these documents in a timely manner because they were not in WTV's "possession, custody, or control."  Doc. 360 at 21–22.  However, the dates listed on the fifteen exhibits reflect that only a small portion of these exhibits were unavailable before the close of discovery.  *See* Doc. 342-1.  Specifically, PX130 (dated December 29, 2015), PX157 (dated June 1, 2016), PX158 (dated May 23, 2017), PX213 (dated April 8, 2021), PX238 (dated Winter 2013), PX364 (dated January 19, 2009), PX397 (dated September 24, 2013), and PX419 (dated July 19, 2017) were published articles, interviews, and press releases available to WTV on the dates of their publication, well before the close of fact discovery on April 30, 2021.  Accordingly, they were not produced in a timely manner.

However, PX248, PX249, PX254, PX258, and PX262 were all published in 2022 such that there is no possibility that these documents were in WTV's "possession, custody, or control" during discovery as is required by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 34(a)(1).  As "control is the test with regard to the production of documents," and it was impossible for WTV to have had control of these documents at the time fact discovery closed, the Court finds that WTV did not violate the Federal Rules of Civil Procedure by disclosing these exhibits to Comcast in January 2023.  *See Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Kleiman v. Wright*, No. 18-80176-CV, 2020 WL 1139067, at *5

26

(S.D. Fla. Mar. 9, 2020) ("The Federal Rules of Civil Procedure require a party to produce materials that are within the party's 'possession, custody, or control.'").

The remaining exhibit PX420 is undated. The Court therefore cannot determine this issue of control at this time and reserves ruling on the admissibility of PX420 until trial, where the document(s) may be more closely inspected. *See In re Seroquel Prod. Liab. Litig.*, No. 606MD-1769-ORL-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009).  Accordingly, Comcast's Motion in Limine re: Unproduced Trial Exhibits is GRANTED as to the documents that were published—and assumed to be in the control of WTV—before the close of fact discovery and DENIED as to the documents with 2022 publication dates. The admissibility of PX420 will be addressed at trial.

## CONCLUSION

The Court has carefully considered all of the arguments raised in the parties' Motions in Limine.  For the reasons set forth above, the parties' Motions in Limine (Doc. 341; Doc. 342) are **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically:

1. WTV's first, fifth, sixth, and ninth Motions in Limine are **GRANTED**. WTV's third and fourth Motions in Limine are **DENIED**. WTV's seventh and eighth Motions in Limine are **DENIED WITHOUT PREJUDICE.** WTV's second Motion in Limine is **TAKEN UNDER**

CONSIDERATION.

2. Comcast's third Motion in Limine is **GRANTED**. Comcast's seventh Motion in Limine is **GRANTED-IN-PART** and **DENIED-IN-PART**. Comcast's second and fourth Motions in Limine are **DENIED**. Comcast's first and sixth Motions in Limine are **DENIED WITHOUT PREJUDICE**. Comcast's fifth Motion in Limine is **DENIED-IN-PART WITHOUT PREJUDICE**.

**DONE AND ORDERED** at Tampa, Florida, on March 28, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record