UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WHEREVERTV, INC.,

    Plaintiff,

v.       Case No:  2:18-cv-529-WJF-NPM

COMCAST CABLE
COMMUNICATIONS, LLC,

    Defendant.

## ORDER

Before the Court is Defendant Comcast Cable Communications, LLC's ("Comcast") Motion to Strike Untimely Expert Opinions. Doc. 364. Plaintiff WhereverTV, Inc. ("WTV") responded in opposition. Doc. 366. For the reasons set forth below, Comcast's Motion is **DENIED**.

## BACKGROUND

On May 21, 2021, WTV timely served the report of its damages expert, Kyle Elam. *See* Doc. S-239-1. Comcast timely served the rebuttal report of its damages expert, Dana Trexler, on July 9, 2021. Doc. 221-2. On December 3, 2021, WTV moved to strike certain opinions offered in Ms. Trexler's rebuttal report. Doc. 221. Among other things, WTV sought to strike "Section VI (except part VI(D)(5)) and

Section VIII (except paragraphs 346, 350, 351, 359, and 372 and note 750)" as impermissible affirmative damages opinions. *Id.* at 7 n.2.

On September 4, 2022, the Court denied WTV's motion to strike but granted WTV the opportunity to introduce a surrebuttal report from Mr. Elam addressing sections VI and VIII of Ms. Trexler's rebuttal report. *See* Doc. 317 at 31. WTV subsequently filed Mr. Elam's surrebuttal report on October 5, 2022. Doc. 323.

On March 2, 2023, WTV served a supplemental expert report in which Mr. Elam updated his damages calculations to reflect more recent data regarding Comcast's deployment of set top boxes. Doc. 364-1 at 3. In anticipation of the March 2023 trial term, Mr. Elam calculated a running royalty through March 24, 2023. *Id.* The supplemental report also included Mr. Elam's opinions on PX169, a video interview of Comcast's Chairman and CEO Brian Roberts that WTV added to its exhibit list in February 2023. *Id.* at 3−4.

Comcast now asserts that Mr. Elam's supplemental report should be excluded because Mr. Elam introduced a new damages theory in his report— namely, he calculated damages through the trial period, not through the expiration of the '431 Patent in 2026. Doc. 364 at 9–11. Comcast also argues that Mr. Elam's opinions regarding PX169 are untimely because the video interview was publicly available as early as May 21, 2021, but was not disclosed by WTV as an exhibit until recently. *Id.* at 12–13. The Court addresses these arguments below.

## LEGAL STANDARD

Expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e)(1)(A), however, allows parties to supplement expert disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." If a supplemental expert disclosure is not in conformity with the requirements set forth in Rule 26(e)(1)(A), the supplemental expert report may be excluded from trial pursuant to Rule 37(c). For example, "a supplemental expert report may be excluded pursuant to [Rule 37(c)] if a party fails to file it prior to the deadline imposed." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007).

However, Rule 37(c) allows for an exception if the proponent of the supplemental expert report can show that its failure to disclose by the established deadline was "substantially justified or harmless." *Lanzi v. Yamaha Motor Corp.*, No. 8:17-CV-2020-T-36AEP, 2019 WL 9553066, at *4 (M.D. Fla. Sept. 26, 2019). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F.

App'x 821, 825 (11th Cir. 2009) (citation omitted). In determining whether a failure to disclose evidence is substantially justified or harmless, courts are guided by the following factors: (1) the unfair prejudice or surprise of the opposing party; (2) the opposing party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; (4) the importance of the evidence; and (5) the offering party's explanation for its failure to timely disclose the evidence. *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250–51 (M.D. Fla. 2012). Ultimately, Courts have broad discretion in deciding whether to exclude evidence under Rule 37(c). *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019).

## **DISCUSSION**

### I. **Updated Damages Calculations**

First, Comcast seeks to strike Mr. Elam's most recent damages calculations outlined in his March 2, 2023, supplemental report, wherein Mr. Elam calculates running royalty damages through March 24, 2023. Comcast asserts that Mr. Elam's new calculations constitute a novel damages theory, as Mr. Elam's now applies a running royalty only to pre-trial sales, not through the life span of the patent set to expire in 2026. Doc. 364 at 9−11.

The question for the Court, therefore, is whether Mr. Elam's new calculations are a proper supplement—which corrects or completes an error or

omission in his initial expert report—or whether they serve some other objective such as gamesmanship or delay. *Venerus v. Avis Budget Car Rental, LLC*, No. 6:13-cv-921-Orl-41GJK, 2016 WL 11742054, at *3 (M.D. Fla. Apr. 15, 2016); *see Beauregard v. Cont'l Tire N. Am., Inc.*, No. 3:08-cv-37-J-32HTS, 2009 WL 1011121, at *2 (M.D. Fla. Apr. 15, 2009) ("Rule 26(e)(1)(A) requires supplementation in situations where the party learns that in some material respect the original disclosure or response is incomplete or incorrect.").

Here, the March 2, 2023, supplemental report appears to merely update Mr. Elam's prior calculations through the date of trial based on information provided by Comcast regarding set top box deployment through the end of 2022. Specifically, Mr. Elam states, "[i]t is my understanding that on February 3 and 10, 2023, Comcast produced additional set-top-box deployment data through the end of 2022. Based on this new data, I updated my analysis for the date of trial. Doc. 364-1 at 3. Mr. Elam's supplemental report therefore completes an omission from his initial expert—namely set top box deployment data between 2021 and 2022— that could not possibly have been included in his initial expert report. Such an update is in conformity with the requirements of Rule 26(e)(1)(A). *See Venerus*, 2016 WL 11742054, at *3 (Rule 26(e)(1)(A) permits "true supplementation (e.g., correcting inadvertent errors or omissions)").

5

Further, Mr. Elam's supplemental report is clearly not an effort at "gamesmanship," as Mr. Elam stated in his initial damages report that if Comcast provided additional set top box deployment data, he would update his analysis accordingly. *See* Doc. S-239-1 at 60 n. 257. He also noted in this report, "If necessary, I will update my calculations for the date of trial." *Id.* at 60 n. 259. Nor was WTV's service of Mr. Elam's supplemental report on March 2, 2023, an attempt to delay the release of his updated damages calculations, given that WTV did not receive 2022 set top box deployment data from Comcast until February 3, 2023. *See* Doc. 366-3. Thus, to the extent Mr. Elam's supplemental report reflecting his updated calculations comes "on the eve of trial," this timing seems to be both substantially justified and harmless, as Mr. Elam gave Comcast clear indications of his intention to update his calculations before trial, which he did as soon as he obtained the requisite data. *See Mobile Shelter Sys.*, 845 F. Supp. 2d at 1250–51 (identifying factors a court may consider in determining whether failure to timely disclose a supplemental expert report was substantially justified or harmless).

And while Comcast bemoans the "*eight* different damages figures" offered by Mr. Elam over the course of this litigation, (Doc. 364 at 11) (emphasis in original), the number of damages figures produced does not appear unfairly prejudicial to Comcast given that the methods used by Mr. Elam to produce such

figures have remained consistent over time. *See Brincku v. Nat'l Gypsum Co.*, No. 2:11-CV-338-FTM-29, 2012 WL 1712620, at *2 (M.D. Fla. May 15, 2012), *aff'd*, 518 F. App'x 776 (11th Cir. 2013) (explaining that "Rule 26(e) permits supplemental reports only for the narrow purpose of . . . adding information that was not available at the time of the initial report. . . . A revised report which includes a new theory is not a proper supplementation under Rule 26(e).").

In his supplemental report, Mr. Elam explicitly stated that he used the same two methods of calculation that he used in his initial report to calculate the up-to-date damages figures. *See* Doc. 364-1 at ¶ 1. This consistency in method should allow anyone with a calculator, Mr. Elam's royalty rates, and the requisite set top box data to determine WTV's proposed running royalty through any particular date. Further, Comcast has cited no case law dictating that calculating a running royalty through trial versus calculating a running royalty through the expiration of a patent constitute two different damages *theories*. Thus, Mr. Elam's calculations in his supplemental report are merely adding new information that was not available at the time of his initial report; they are not including new theories of damages that Comcast has never seen.

Given that Mr. Elam's methods of calculation have not changed from his initial report, and given that he gave Comcast notice in his initial report that he

7

would update his calculations once he received more data as to set top box deployment, there is no element of unfair surprise here. *See Lanzi*, 2019 WL 9553066, at *5 (finding no element of unfair surprise where expert "stated in his deposition that he intended to conduct additional work on the case and proffer further opinions once he gained access to additional records" and subsequently filed a supplemental expert report based on those additional records). Thus, Mr. Elam's updated calculations reflected in his supplemental report do not run afoul of Rule 26(e)(1)(A) and are not due to be stricken.

## II.  PX169 – Interview of Brian Roberts

Comcast also seeks to exclude Mr. Elam's opinions about PX169 as untimely. Doc. 364 at 12. The PX169 video interview was made publicly available on May 12, 2021, but WTV did not discover the video interview until early February 2023.  Doc. 366 at 5 n.2, 6. WTV disclosed PX169 on its exhibit list on February 10, 2023. Doc. 364 at 12. WTV contends that the video constitutes "crucial evidence in support of Mr. Elam's opinion" and asserts that "[a]nyone watching the relevant portion of the interview will immediately appreciate its relevance and relationship to Mr. Elam's existing opinions." Doc. 366 at 12. Comcast, however, states that WTV is effectively ambushing it with late-disclosed evidence that it could have unearthed years ago. Doc. 364 at 12.

Here, the Court accepts WTV's representation that it disclosed the video interview as soon as it became aware of it in early February 2023. Doc. 366 at 6. Given that WTV did not have the video interview until early February 2023, Mr. Elam's failure to opine on the video until March 2023 seems substantially justified. *See Mobile Shelter Sys.*, 845 F. Supp. 2d at 1250–51 (identifying "the offering party's explanation for its failure to timely disclose the evidence" as a factor courts may consider in determining whether failure to timely disclose a supplemental expert report was substantially justified or harmless).

Further, Mr. Elam's opinions regarding the video interview do not alter his existing damages theories in any way, nor do they present new damages theories. Instead, Mr. Elam merely states that Mr. Roberts' comments in the video interview tend to corroborate certain opinions *already provided* by Mr. Elam in his initial report and surrebuttal report. Doc. 364-1 at ¶¶ 3–4. At least one of these existing opinions from Mr. Elam's initial report includes a quote from Mr. Roberts about the integration of Netflix into X1 during an earnings call in 2016. *See* Doc. S-239-1 at ¶ 82. Thus, Mr. Elam's opinions about Mr. Roberts' statements in the video interview merely go to the weight of opinions that Mr. Elam has already introduced. They are not new theories or opinions, nor do they serve to ameliorate poor preparation for trial by trotting out an idea that has yet to be introduced by WTV. *See Brincku*, 2012 WL 1712620, at *2.

Accordingly, though this portion of Mr. Elam's supplemental report is based, in part, on information that was publicly available at the time of his initial report, his opinions are not prejudicial. *See Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653, at *7 (M.D. Fla. Oct. 21, 2016) (denying motion to strike supplemental expert report based on information available to the expert at the time of his initial report because "[t]hese corrections did not advance a new theory of damages, but instead corrected Dr. Fishkind's calculation under the method of calculating damages he espoused in his Initial Report"); *Garcia-Celestino v. Consol. Citrus Ltd. P'ship*, No. 2:10-cv-542-MEA-DNF, 2014 WL 436319 (M.D. Fla. Feb. 4, 2014) (declining to preclude plaintiffs from introducing new evidence of damages at trial when plaintiffs supplemented their Rule 26 disclosures six days prior to the close of discovery, which prevented Defendants from re-deposing Plaintiffs or conducting discovery on that issue).

"Without a finding of bad faith or gamesmanship on the eve of trial, many courts are loathe to invoke the strong medicine of precluding expert testimony." *Collins v. United States*, No. 3:08-CV-923-J-32JRK, 2010 WL 4643279, at *5 (M.D. Fla. Nov. 9, 2010) (internal quotations omitted). Thus, the Court finds that Mr. Elam's statements regarding PX169 constitute a proper supplement under Fed. R. Civ. P. 26(e) and are not due to be stricken for untimeliness.

## CONCLUSION

For the foregoing reasons, Comcast's Motion to Strike (Doc. 364) is **DENIED**. However, Comcast's damages expert, Ms. Trexler, may reply to Mr. Elam's supplemental report at trial and may bring her own damages calculations up-to-date, as well.

**DONE AND ORDERED** at Tampa, Florida, on March 31, 2023.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record