**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| WHEREVERTV, INC.<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC,<br><br>Defendant. | § § § § § § § § § § § § § | No. 2:18-cv-00529-WFJ-KRH |

**JOINT FINAL PRETRIAL STATEMENT**

## TABLE OF CONTENTS

I. BASIS FOR FEDERAL JURISDICTION – L.R. 3.06(b)(1)

II. STATEMENT OF THE ACTION – L.R. 3.06(b)(2)

III. STATEMENT OF EACH PARTY'S POSITION – L.R. 3.06(b)(3)

IV. EXHIBIT LISTS AND OBJECTIONS – L.R. 3.06(b)(4)

V. WITNESS LISTS – L.R. 3.06(b)(5) & (b)(6)

VI. MONETARY DAMAGES BREAKDOWN – L.R. 3.06(b)(7)

VII. PRIOR TESTIMONY IN LIEU OF LIVE TESTIMONY – L.R. 3.06(b)(8)

VIII. ADMITTED FACTS – L.R. 3.06(b)(9)

IX. AGREED PRINCIPLES OF LAW – L.R. 3.06(b)(10)

X. DISPUTED ISSUES OF FACTS – L.R. 3.06(b)(11)

XI. DISPUTED ISSUES OF LAW – L.R. 3.06(b)(12)

XII. PENDING MOTIONS AND OTHER ISSUES – L.R. 3.06(b)(13)

XIII. FURTHER SETTLEMENT DISCUSSIONS – L.R. 3.06(b)(14)

XIV. CERTIFICATIONS OF COUNSEL – L.R. 3.06(b)(15)

Pursuant to the Court's Fifth Amended Case Management and Scheduling Order (Doc. No. 449) and Local Rule 3.06(b), Plaintiff WhereverTV, Inc. ("WhereverTV") and Defendant Comcast Cable Communications, LLC ("Comcast") respectfully submit this joint final pretrial statement.

## I. BASIS FOR FEDERAL JURISDICTION

This Court has original and exclusive jurisdiction over this action because the claims arise under federal patent law. *See* 28 U.S.C. §§ 1331, 1338(a). WhereverTV asserts claims for patent infringement under 35 U.S.C. § 271. Comcast does not contest personal jurisdiction or venue in this Court for this action.

## II. STATEMENT OF THE ACTION

WhereverTV is the assignee and owner of U.S. Patent No. 8,656,431 (the '431 patent). In this action, WhereverTV alleges that Comcast's cable television system known as the X1 Platform infringes independent Claim 1 of the '431 Patent. **[WHEREVERTV'S PROPOSAL:** However, if the Court allows Comcast to revive abandoned invalidity defenses and/or assert new noninfringement defenses, WhereverTV may also assert other claims, including, but not limited to, Claims 3, 5, 6, and 8. Comcast asserts that it does not infringe Claim 1 of the '431 Patent and that the asserted claim is invalid under 35 U.S.C. § 102.**]** **[Comcast Proposal:** Comcast asserts that it does not infringe any asserted claim of the '431 Patent and that any asserted claims are invalid under 35 U.S.C. §§ 102, 103, and/or 112.**]** WhereverTV seeks damages pursuant to a reasonable royalty theory. Comcast denies that WhereverTV is entitled to damages and disputes the purported reasonable royalty WhereverTV proposes.

## III. STATEMENT OF EACH PARTY'S POSITION

### A. WhereverTV's Position

Mark Cavicchia is the inventor of the `431 Patent and the founder of WhereverTV. WhereverTV is the owner by assignment of the `431 patent, which was issued by the U.S. Patent and Trademark Office on February 18, 2014.

Almost twenty years ago, Cavicchia realized that the way people consumed video programming was changing. The `431 Patent recognizes that "some major content owners [had] begun to offer [video] programming via the Internet" and that these Internet services would "allow users to bypass the traditional MSO subscription and license content directly via the Internet." 2:29–33. The `431 Patent also recognizes that "numerous Internet-only television channels and video podcasts [had] been created by independent content owners" and that these channels would likely "grow at a tremendous rate over the coming years." 2:32–35.

The `431 Patent discloses novel systems for receiving, accessing, managing, and viewing digital content from different sources. These novel methods and systems provide a technological advancement by, among other things, seamlessly integrating traditional cable channels alongside modern Internet streaming channels like Netflix via a user-configurable interactive programming guide.

This technology is extremely valuable to cable providers like Comcast, who have seen their legacy cable television business model challenged by increased competition over the last several years. In or around 2012, Comcast recognized that it was facing significant competitive pressure and was losing subscribers and market share due to so-called cord cutters. In or around September 2016, Comcast implemented a business plan to become the "aggregator of aggregators" by developing a new cable television platform known as the X1 Platform, which integrates traditional

cable channels alongside modern streaming channels like Netflix, Amazon Prime Video, and Tubi, among others.

By infringing on the technology disclosed in the `431 Patent, Comcast now offers the capability to access both traditional cable channels and modern streaming channels through its X1 Platform. The X1 Platform, which includes certain X1 set-top boxes and the X1 IPG, among other components, meets all the limitations of the asserted claims of the `431 patent. The features of the X1 Platform covered by WhereverTV's patent are critical to Comcast's ability to compete in the modern era of television. Comcast has not shown, and cannot show, that it has any available non-infringing alternatives.

Under the Patent Act, the patent owner shall recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. WhereverTV's damages expert Kyle Elam analyzed the relative value of the patented features of the X1 Platform under the *Georgia-Pacific* factors and the rules of apportionment. Using Mr. Elam's running-royalty analysis, he found that the appropriate measure of damages is a running royalty of either $0.05 per infringing X1 set-top box under his first method or $0.076 per infringing X1 set-top box under his second method. Based on the total number of deployed infringing X1 set top boxes, Mr. Elam opined that the total damages through the life of the patent are between $97.3 million (first method) and $147.5 million (second method) as of March 24, 2023. In response to Comcast's damages expert's analysis and her opinion that Comcast would have insisted on a lump-sum structure based on the OTT revenue that Comcast has collected in relation to the X1 system, Mr. Elam also calculated a reasonable lump-sum value of $166 million to $177 million.[1]

---

[1] These figures will be updated based on new information provided by Comcast.

Comcast's primary theories of invalidity have already been rejected by the Patent Trial and Appellate Board (PTAB). Soon after this case was filed, Comcast filed two petitions for *inter partes* review with the PTAB, arguing that the `431 patent is invalid in view of similar combinations of prior art that Comcast relies on in this case. Applying a more lenient standard than the "clear and convincing" standard Comcast must meet in this Court to establish invalidity, the PTAB rejected both of Comcast's petitions. After considering Comcast's arguments and sworn expert declarations, the PTAB determined that there was not a reasonable likelihood that Comcast could prevail in showing that any one of the challenged patent claims was invalid based on the prior art. Comcast also asserted an indefiniteness theory, which the Federal Circuit rejected on appeal. Comcast's sole remaining invalidity theory is anticipation based on the Myrio system, but Comcast cannot show by clear and convincing evidence that this system had all the recited features of Claim 1 of the '431 Patent.

**B. Comcast's Position**

Comcast is a 60-year-old American company founded in Tupelo, Mississippi and headquartered in Philadelphia, Pennsylvania. Comcast is a market leader in content delivery technologies provided under its Xfinity® and other brands, and has become one of the largest providers of cable TV and related services in the United States. Comcast is a technological innovator and has developed many of the advanced technologies used in the industry today.

Purportedly founded in 2006, WhereverTV sought to offer a service through which subscribers could access certain video content over the Internet. WhereverTV's founder, Mark Cavicchia, is the sole named inventor on the '431 Patent. Mr. Cavicchia was far from the first person to conceive of a service like that described in the '431 Patent; his application, though filed in July 2006, languished in the United States Patent and Trademark Office for nearly eight years, as WhereverTV struggled to identify anything to distinguish Mr. Cavicchia's idea from the

already-crowded prior art landscape. The '431 Patent issued in February 2014 with claims far narrower than the concept described in the patent's specification (and characterized by WhereverTV above).

After struggling for years to launch a service that embodied his idea, Mr. Cavicchia ceded control of WhereverTV to its current CEO, Edward Ciofani, in 2015. By June 30, 2018, shortly before WhereverTV filed this case, WhereverTV had an accumulated deficit of nearly $7.5 million. WhereverTV has represented to the Court that it does not have the financial resources to offer a product, and WhereverTV has no U.S. Patents other than the '431 Patent.

WhereverTV sued Comcast for infringement of the '431 Patent in August 2018. Its claims have since been narrowed to alleged direct infringement of claim 1 (the "asserted claim"). Comcast does not infringe the asserted claim because Comcast's X1 platform does not satisfy many of its limitations.

Because Comcast does not practice the '431 Patent, it is not liable for infringement and owes WhereverTV no damages. Further, Comcast will prove at trial that the asserted claim of the '431 Patent is invalid under 35 U.S.C. §§ 102, 103, and/or 112. Contrary to WhereverTV's characterizations above, Comcast's invalidity defenses include grounds that the United States Patent and Trademark Office never considered during the lengthy prosecution of the '431 Patent and that Comcast could not have asserted in *inter partes* review proceedings.

Even assuming there was merit to WhereverTV's claim of infringement of a valid patent claim, which there is not, WhereverTV drastically overstates the value of its case. WhereverTV's patent does not cover Comcast's "X1 Platform," as WhereverTV contends. Comcast independently created the X1 Platform. Comcast began developing the X1 Platform in 2009 and launched it commercially in 2012, years before the '431 Patent issued. The platform comprises

numerous features unrelated to the '431 Patent, including VOD, DVR, apps and integrated products unrelated to streaming, as well as account-management features that allow users to manage their Comcast credentials and make service appointments, among other functions. WhereverTV does not, and cannot, claim to have invented any of that technology.

WhereverTV accuses just *one feature* of X1 of infringement: the integration of over-the-top (OTT) video content providers, like Netflix and Amazon, into the X1 IPG, which Comcast added to X1 for the first time in 2016.

WhereverTV lacks any evidence to support its claims about the value of the OTT integration. For example, WhereverTV cannot support its contention that Comcast's OTT integration was a competitive response to "cord cutting" and it has no evidence that Comcast's OTT integration has saved Comcast a single customer. Indeed, such an assumption defies common sense: Comcast's X1 Platform is a premium cable service, and no reasonable consumer would pay Comcast for cable service simply to access OTT content they can access and/or purchase without Comcast. WhereverTV's damages expert, Mr. Elam, offers bloated damages estimates that are inconsistent with this reality. Comcast will demonstrate that his opinions lack any support in the evidence.

## IV. EXHIBIT LIST

WhereverTV's exhibit list is attached as **Exhibit A** to this joint pretrial statement. Comcast's exhibit list is attached as **Exhibit B** to this joint pretrial statement. The parties' joint exhibit list is attached as **Exhibit C** to this joint pretrial statement. Each party's exhibit list includes, as appropriate, citations to the Federal Rules of Evidence and/or Federal Rules of Civil Procedure to note any objections lodged by the opposing party. Exhibits not listed in either party's exhibit list will not be admitted at trial unless good cause is shown. Exhibits used solely for

purposes of impeachment **[COMCAST'S PROPOSAL:** and not entered into evidence[2]**]** need not be included on the lists of trial exhibits or disclosed in advance of being used at trial. The parties shall adhere to the Court's Instructions Regarding Exhibit Lists, Marking Exhibits, Sensitive Exhibits, and Electronic Exhibit Binders.

The parties each reserve the right to offer exhibits set forth in the opposing party's list, subject to evidentiary objections. The listing of a document on a party's exhibit list is not an admission that the document is admissible when offered by the opposing side. Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which the evidence is offered. The parties have agreed that neither will remove an exhibit from its exhibit list unless it provides the opposing party the opportunity to add the exhibit to its own exhibit list.

The parties agree that any document produced from a party's files that was created by the producing party is deemed authentic, subject to the right of any party against whom the document is offered to adduce evidence to the contrary.

**[COMCAST'S PROPOSAL:** No exhibit will be admitted unless offered into evidence through a witness competent to testify about the exhibit, who must at least be shown the exhibit.[3]**]** Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so. **[COMCAST'S PROPOSAL:** An expert may not introduce any exhibit that

---

[2] The Court previously adopted Comcast's proposal on this issue. March 31, 2023 Pretrial Conference Tr. at 14:10-21.

[3] The Court previously overruled Comcast's proposal on this issue. March 31, 2023 Pretrial Conference Tr. at 14:22-15:7. Comcast understands that the Court's previous ruling will apply and thus, while Comcast preserves its objections to evidence entered without a sponsoring witness, Comcast will omit its objections on that ground from the objections it lists on WTV's exhibit list.

was not relied upon in that expert's report(s) submitted pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[4]**]** **[WHEREVERTV'S PROPOSAL:** Except as otherwise expressly agreed, the Federal Rules of Evidence and the Federal Rules of Civil Procedure shall govern the admissibility of evidence at trial.**]**

The parties agree that any date or description of a document (or absence thereof) on an exhibit list is provided for convenience only and shall not be used as evidence regarding that document. A party's failure to introduce any exhibit appearing on its list, or the withdrawal of an objection to any exhibit appearing on the opposing party's list, shall not be commented upon in the presence of the jury during trial.

The parties agree that legible photocopies of United States patents and the contents of the USPTO file history of the '431 Patent may be offered and received in evidence (if otherwise admissible) in lieu of certified copies thereof.

A party may not offer multiple exhibits as single exhibits **[COMCAST'S PROPOSAL:** or combine documents produced separately by a party to create a single exhibit[5]**]**.

The parties agree that demonstrative trial exhibits shall not be introduced into evidence or listed on the parties' exhibit lists. The parties agree that summary exhibits under Federal Rule of Evidence 1006 need not be listed on the parties' exhibit lists. The proponent of a demonstrative or summary exhibit (other than those to be used on cross-examination) shall provide a copy of the

---

[4] The Court previously overruled Comcast's proposal on this issue. March 31, 2023 Pretrial Conference Tr. at 15:8-15. Comcast understands that the Court's previous ruling will apply; however, Comcast preserves its objections to exhibits introduced through an expert who did not rely on said exhibits in their expert report(s). Comcast will omit its objections on that ground from the objections it lists on WTV's exhibit list.

[5] The Court previously overruled Comcast's proposal on this issue. March 31, 2023 Pretrial Conference Tr. at 15:16-16:3. Comcast understands that the Court's previous ruling will apply; however, Comcast preserves its objections to combination exhibits.

exhibit to the opposing party in PDF, PowerPoint, or other reasonably usable format, according to the schedule below. Demonstratives may not be used by the opposing party prior to being used by the disclosing party. Demonstratives shall not be introduced into evidence or provided to the jury, except upon agreement of the parties. Demonstratives shall contain citations identifying the source of any cited material.

Each party shall make available for inspection any physical exhibits three calendar days before the final pretrial conference.

For exhibits (including without limitation physical, demonstrative, and summary exhibits) used in opening statements, the parties shall identify each exhibit and exchange by email and/or other electronic means (such as FTP site or thumb drive) copies of each demonstrative or summary exhibit that each party intends to use in its respective statement by 6:00 PM EDT one calendar day before opening statements. For irregularly sized physical demonstrative exhibits, the party seeking to use the demonstrative shall provide a color representation in 8.5” x 11” PDF format, unless such format would render the demonstrative illegible or otherwise inscrutable. Demonstrative exhibits to be used in opening arguments shall include all slides the party will present to the jury. For the avoidance of doubt, the slides shall not be shuffled or randomized, and slides that may later include blow-ups or highlights of exhibits shall include the pertinent page of the exhibit to be later blown up or highlighted. The preceding sentences notwithstanding, the prohibition on shuffling shall not prevent a party from changing the order of its presentation, skipping slides, or revisiting slides, nor from adding enlargement, highlighting, ballooning, or other similar techniques that may be used with respect to a particular exhibit. Nor shall a party be prohibited from live presentation of exhibits (e.g., via document camera, TrialDirector, or similar) outside of the exchanged demonstrative and summary exhibits. The receiving party shall inform the opposing party of any

objections to the opposing party's demonstratives by 7:30 PM EDT on the day exhibits to be used in opening statement are disclosed, and the parties shall meet and confer at 8:00 PM EDT to resolve any objections. Any outstanding disputes shall be presented to the Court the following morning. Failure to present an objection to an opening demonstrative or part thereof constitutes a waiver of the objection for purposes of the opening statements. The parties acknowledge that non-substantive revisions may be made to the exhibits (including adding highlighting or blow ups of the page already shown on a slide) even after the exchange deadlines. The parties shall also exchange PDF copies of the demonstratives actually used in the opening statements by 7:00 PM EDT (or as soon thereafter as practicable) on the day the opening statements are delivered.

For any exhibits (including without limitation physical, demonstrative, and summary exhibits) that are to be used during the direct examination of any witness, by 7:00 PM EDT (or as soon as practicable thereafter) on the calendar day before such exhibits are to be used, the parties shall identify each such exhibit and the witness with whom it will be used and exchange by email and/or other electronic means (such as FTP site or thumb drive) copies of each demonstrative or summary exhibit that each party intends to use. For irregularly sized physical demonstrative exhibits, the party seeking to use the demonstrative shall provide a color representation in 8.5" x 11" PDF format, unless such format would render the demonstrative illegible or otherwise inscrutable. For the avoidance of doubt, a party shall not be prohibited from live presentation of exhibits (e.g., via document camera, TrialDirector, or similar) outside of the exchanged demonstrative and summary exhibits. The receiving party shall inform the opposing party of any objections to the opposing party's exhibits as soon as practicable and no later than 8:00 PM EDT the same calendar day, and the parties shall meet and confer at 8:30 PM the same day (or as soon as practicable thereafter). Any outstanding disputes shall be presented to the Court the following

morning. Failure to present an objection constitutes a waiver of the objection. The parties shall also exchange copies of the demonstratives actually used with a witness by 7:00 PM EDT (or as soon as practicable thereafter) on the day the demonstratives are used. The parties agree that they will work in good faith to accommodate the need for reasonable adjustments to the disclosure schedule set forth herein.

For exhibits (including physical, demonstrative, or summary exhibits) used in closing statements, the parties shall identify each exhibit and exchange by email and/or other electronic means (such as FTP site or thumb drive) copies of each demonstrative or summary exhibit that each party intends to use in its respective statement by 7:00 PM EDT (or as soon as practicable thereafter) one calendar day before closing statements. Demonstrative exhibits to be used in closing arguments shall be exchanged in the form they will be presented and shall include all slides the party will present to the jury. For the avoidance of doubt, the slides shall not be shuffled or randomized, and slides that include blow-ups or highlights of exhibits shall be included. The preceding sentences notwithstanding, the prohibition on shuffling shall not prevent a party from changing the order of its presentation, skipping slides, or revisiting slides, nor from adding enlargement, highlighting, ballooning, or other similar techniques that may be used with respect to a particular exhibit. A party shall not be prohibited from live presentation of admitted exhibits (e.g., via document camera, TrialDirector, or similar) outside of the exchanged demonstrative and summary exhibits. The parties acknowledge that non-substantive revisions may be made to the exhibits even after the exchange deadlines. The receiving party shall inform the opposing party of any objections to the opposing party's demonstratives by 8:00 PM EDT the same day, and the parties shall meet and confer at 8:30 PM EDT to resolve any objections. Any outstanding disputes shall be presented to the Court the following morning. Failure to present an objection to a closing

demonstrative or part thereof constitutes a waiver of the objection for purposes of the closing statements. The parties shall also exchange copies of the demonstratives actually used in the closing statements by 7:00 PM EDT (or as soon as practicable thereafter) on the day the closing statements are delivered.

Upon the end of all parties' presentation of evidence, the parties will compile for the jury a set of copies of all exhibits in evidence. This set shall be distributed to the jury before they commence deliberation and shall be collected from the jury each night before they retire from deliberation. When not in possession of the jury, the set of copies will be held by the bailiff of the Court. In the event native, electronic versions of exhibits are admitted into evidence, the parties shall provide the jury a laptop with the ability to view the native exhibits.

## V. WITNESS LISTS

WhereverTV's list of potential witnesses for trial is attached as **Exhibit D** to this joint pretrial statement. Comcast's list of potential witnesses for trial is attached as **Exhibit E** to this joint pretrial statement. Each list contains a notation to differentiate expert witnesses and fact witnesses. The parties' witness lists are not a commitment that any of the witnesses listed are available or will appear for trial.

The parties agree that, by 7:00 PM EDT (or as soon as practicable thereafter) two calendar days prior to each day of trial, each party shall provide by email to the opposing party's counsel a list of witnesses the party intends to call for direct examination, the order in which the party will call the witnesses, and the method of testimony (i.e., live or by designated deposition). As discussed in greater detail above, by 7:00 PM EDT (or as soon as practicable thereafter) one calendar day before a witness will testify, each party shall, by email to the opposing party's counsel, identify any exhibits it intends to use with each witness and provide copies of any demonstrative or summary exhibits.

For cross-examination, each party will provide the other party with two binders (or sets of binders) containing the exhibits or other materials that it reasonably anticipates may be used during the cross-examination of the witness, including any impeachment materials. The examining counsel will also provide two copies of the binders to the Court. The binders will be provided immediately prior to the start of the cross-examination. Counsel that receives the cross-examination binders will not make any copies of it. **[WHEREVERTV'S PROPOSAL:** If the trial adjourns or recesses during the cross-examination of the witness, or the cross-examination of the witness is otherwise interrupted for any reason, the receiving counsel must return the binders to the examining counsel during the recess or adjournment.**] [COMCAST'S PROPOSAL:** If a witness on cross examination is held over at the end of a trial day, the receiving counsel must return the binders to the examining counsel.**]** Examining counsel will return the binders to receiving counsel when the cross-examination resumes.

Notwithstanding the foregoing, a party shall not be precluded from using a document for cross examination to rebut testimony given by the witness for the sole reason that it was not provided before cross examination of the witness. **[WHEREVERTV'S PROPOSAL:** Nor shall a party be precluded from using with a witness an exhibit (subject to other objections regarding admissibility) that was not identified for use in direct examination of the witness to rebut testimony, evidence, or lines of questioning that arose during the cross-examination of the witness.**] [COMCAST'S PROPOSAL:** On redirect examination, the parties shall be restricted to exhibits that were identified for use in direct examination of the witness or used during the cross-examination of the witness.**]**

Pursuant to Federal Rule of Evidence 615, the parties request that the Court prevent fact witnesses, other than witnesses who have completed their testimony and been excused, from

hearing the testimony of other witnesses. In accordance with provision (2) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative. The parties further request that expert witnesses disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) not be excluded for either fact or expert testimony.

## VI. MONETARY DAMAGES BREAKDOWN

WhereverTV seeks a reasonable royalty under 35 U.S.C. § 284 and is not seeking lost profits. WhereverTV's damages expert, Mr. Elam, proposes alternative apportionment methods for calculating the reasonable royalty, including running-royalty and lump-sum approaches. WhereverTV also seeks an award of interest and costs under 35 U.S.C. § 284. WhereverTV reserves the right to seek an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

Comcast denies infringement of the '431 Patent and therefore denies that WhereverTV is entitled to any remedy or relief. Comcast also contends that the '431 Patent is invalid under **[WhereverTV Proposal:** 35 U.S.C. § 102**]** **[Comcast Proposal:** 35 U.S.C. §§ 102, 103, and/or 112**]** and, for this independent reason, denies that WhereverTV is entitled to any remedy or relief. Even if WhereverTV were to prove infringement of the '431 Patent, and Comcast were to fail to prove that the patent is invalid, Comcast disputes WhereverTV's proposed damages and will present rebuttal testimony regarding the amount of any reasonable royalty. Comcast reserves the right to seek all appropriate relief from the Court, including an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## VII. PRIOR TESTIMONY IN LIEU OF LIVE TESTIMONY

WhereverTV's list of designated prior testimony that may be offered in lieu of live testimony, along with Comcast's objections and counter-designations thereto, is attached as **Exhibit F**. Comcast's list of designated prior testimony that may be offered in lieu of live

testimony, along with WhereverTV's objections and counter-designations thereto, is attached as **Exhibit G**.

The parties agree that the listing of a prior testimony designation (or counter-designation) does not constitute an admission as to the admissibility of the testimony, nor is it a waiver of any applicable objection. The parties reserve the right to assert objections to the admissibility of any testimony (including deposition testimony) in view of the context for which the opposing party offers the testimony at trial. The parties agree that any prior testimony to be used at trial may be used regardless whether the transcript of such prior testimony has been signed and filed.

By 7:00 PM EDT (or as soon as practicable thereafter) on the day that is three calendar days before a witness is presented by designated prior testimony, the party offering the witness shall provide by email (or FTP submission) to the opposing party's counsel the list of final prior testimony designations that they intend to present at trial.[6] The other party shall provide any final counter-designations for such witness by email to the offering party's counsel by 7:00 PM EDT on the following day (*i.e.,* two calendar days before the witness is presented). The offering party shall then provide any counter-counter-designations for that witness to the other party's counsel by 8:00 PM EDT on that same day. The parties shall meet and confer by 8:30 PM EDT (or as soon as practicable thereafter) on the same day to attempt to resolve any unresolved objections to the prior testimony designations and counter-designations.

Unresolved objections to prior testimony shall be submitted to the Court one calendar day before the witness is presented by prior testimony (or on the morning of the same day in the event

---

[6] The parties believe that this procedure will allow for smoother administration of the trial than the procedure outlined in the first case management order, especially given the timing of the pretrial conference and trial start dates. *See* Doc. 58 at 12. Of course, the parties are happy to follow whatever procedure the Court prefers.

that the witness is to be presented on a Monday). The offering party shall provide the Court with copies of the prior testimony excerpts designated by each party (including counter-designations and counter-counter-designations), with objections noted in the margin.

A party offering prior testimony in lieu of live testimony may, before offering the testimony, make a short, agreed statement of introduction for the witness that may be read to the jury. The statement shall only serve to identify the witness, e.g., by name, title, and affiliation.[7] **[WHEREVERTV'S PROPOSAL:** If the witness previously testified as a corporate representative under Rule 30(b)(6), the party presenting the witness may include the same in the statement and may summarize the subject matters for which the witness was previously designated to testify.**]** The party offering the prior testimony shall provide a copy of any proposed statement of introduction by 7:00 PM EDT on the night before the prior testimony is to be presented. **[WHEREVERTV'S PROPOSAL:** If the witness testified as a corporate representative and the deposition testimony played is within the scope of a topic on which the witness was designated, the statement may identify the relevant topics on which the witness was designated. The statement may also identify the current trial exhibit number of any exhibits that are mentioned in the testimony to be played. Any disputes regarding the statement shall be presented to the Court at the time that any disputes regarding the designation of the witness's testimony are presented.**]**

As part of the exchange process above, the party offering prior testimony shall provide the other party with the prior testimony excerpts that they intend to present. The other party may lodge objections, including under Federal Rule of Evidence 106 and Federal Rule of Civil Procedure 32(a)(6), and may identify any counter-designation testimony it believes in fairness ought to be

---

[7] The Court previously overruled both of WhereverTV's proposals on the inclusion of 30(b)(6) topics in the introductory statement and adopted Comcast's. March 31, 2023 Pretrial Conference Tr. at 17:5-12.

considered at the same time under Federal Rule of Evidence 106 and Federal Rule of Civil Procedure 32(a)(6). The party offering the prior testimony shall then do the same with respect to any counter-counter-designation testimony. All such designated testimony shall be presented in chronological order. Any objections or disputes regarding the Rule 106 objections and designations must be presented to the Court along with other objections. If the non-offering party wishes to present additional prior testimony from the same witness in its case, it may do so by following the same procedure, provided such use of prior testimony is permitted by Federal Rule of Civil Procedure 32.

All irrelevant and redundant material such as objections and colloquy between counsel will be eliminated when the prior testimony is read or viewed at trial, to the extent feasible.

The parties may offer some or all of the prior testimony designated herein. A party's decision not to introduce some or all of the prior testimony of a witness designated herein shall not be commented upon at trial. If a party decides not to introduce prior testimony that it has designated, the other party may counter-designate it.

Any prior testimony in this case may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of prior testimony designations, if the testimony is otherwise competent for such purpose.

In order to reduce the number of duplicative exhibits, where a prior testimony excerpt refers to a document by exhibit number and that identical document was also marked as a different exhibit number, a party may substitute one exhibit for another.

## VIII. ADMITTED FACTS

**Exhibit H** to this joint pretrial statement is a concise statement of facts that the parties agree require no proof at trial and should be part of the evidentiary record. In addition to the facts

set forth in Exhibit H, the parties stipulate that WhereverTV does not allege in this case that either of Comcast's Flex or Stream products infringes the '431 Patent.

## IX. AGREED PRINCIPLES OF LAW

**Exhibit I** to this joint pretrial statement is a concise statement of legal principles that the parties agree are applicable to this action.

## X. DISPUTED ISSUES OF FACT

WhereverTV's statement of issues of fact that remain to be litigated at trial is attached as **Exhibit J**. Comcast's statement of issues of fact that remain to be litigated is attached as **Exhibit K**.

## XI. DISPUTED ISSUES OF LAW

Currently before the Court are the parties' pending motions *in limine* and the parties' pending motions for summary judgment. In addition, the legal issues presented in WhereverTV's *Daubert* motions (Docs. 221 and 225) and prior motions for summary judgment (Doc. 220) likewise remain disputed. Attached as **Exhibit L** is WhereverTV's list of disputed legal principles. WhereverTV believes that Comcast's purported recitation of the applicable legal framework (Exhibit M) is not helpful to the Court in identifying disputed issue of law.

Comcast contends that the construction of claim terms addressed in claim-construction proceedings and the admissibility of evidence addressed in decided motions *in limine* remain disputed issues of law. Comcast understands that these issues have been resolved by definitive pretrial rulings and are preserved for appellate challenge. Would the Court be open to reconsidering them, Comcast would present evidence about them at trial. The legal issues previously presented in Comcast's *Daubert* motions also remain disputed, *viz.*: (1) whether the component-counting analysis of WhereverTV's technical expert, Dr. Easttom, is unreliable and inadmissible, (2) whether the royalty base selected by WhereverTV's damages expert, Mr. Elam,

violates the Entire Market Value Rule, (3) whether Mr. Elam's apportionment methods are unreliable and inadmissible, and (4) whether Mr. Elam improperly assigns damages for years of post-trial, future infringement.

Because legal disputes are likely to arise at trial, Comcast's statement of issues of law that remain to be litigated at trial, attached as **Exhibit M**, sets forth what Comcast believes to be the applicable legal framework regarding the issues to be addressed at trial.

## XII. PENDING MOTIONS AND OTHER ISSUES

Currently pending motions:

- WhereverTV's motion for partial summary judgment (Doc. 462)
- Comcast's motion for summary judgment of non-infringement (Doc. 464)
- WhereverTV's motions *in limine* (Doc. 518)
- Comcast's motions *in limine* (Doc. 519)

The estimated length of the trial is 8 trial days (Doc. 326).

The presentation of evidence at trial shall not be timed. However, the parties should have equal time for voir dire and to present opening and closing statements.

The order of presentations at the trial shall be as follows:

- Opening statements (WhereverTV first, followed by Comcast);
- WhereverTV's presentation of evidence of infringement and damages;
- Comcast's presentation of rebuttal evidence of non-infringement and damages and presentation of evidence of invalidity;
- WhereverTV's reply evidence concerning infringement and damages and WhereverTV's presentation of rebuttal evidence of invalidity;
- Comcast's reply evidence concerning invalidity;
- **[WHEREVERTV'S PROPOSAL:** Closing arguments (WhereverTV, then Comcast,

then WhereverTV's reply)**]**

- **[COMCAST'S PROPOSAL:** Closing arguments (WhereverTV, then Comcast, then WhereverTV's reply, and then Comcast's reply). [8]**]**

The parties agree to follow the provisions of the Joint Confidentiality Stipulation regarding the confidentiality of exhibits used at trial. The Joint Confidentiality Stipulation, insofar as it restricts the dissemination and use of designated material, including documents marked "Confidential" or "Highly Confidential - Attorneys' Eyes Only," shall not apply to the introduction of evidence at trial. However, either party may seek appropriate Court orders, including without limitation an order which restricts the use of any material covered by the Joint Confidentiality Stipulation during the trial, seals portions of the trial transcript, or restricts access of the public to certain portions of the trial. Either party may propose to the Court for the Court's consideration a procedure for displaying to the Court, jury, parties, and witnesses exhibits marked "Highly Confidential - Attorneys' Eyes Only" after having had the opportunity to view the Courtroom. The movant will confer with the non-movant about any such proposed orders or procedures before they are presented to the Court.

The parties agree that neither party shall present evidence, testimony, or argument about the opposing party's privilege logs or other invocations of privilege, including but not limited to objections in depositions. If an invocation of privilege becomes relevant during trial, the parties will approach the bench. The parties also agree that neither party will present any evidence regarding the other party's objections during discovery.

[8] The Court previously indicated its likely intent to adopt Comcast's proposal on this issue. March 31, 2023 Pretrial Conference Tr. at 18:10-16.

The parties request that the Court grant access to the Courtroom the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial. To the extent that both sides will be sharing common equipment in the Courtroom, each side will share the cost of that equipment.

## XIII. FURTHER SETTLEMENT DISCUSSIONS

Prior to the first trial in this case, the parties engaged in efforts to explore resolution of the controversy by settlement. The parties, in conjunction with their respective counsel, have since considered the possibility of settlement. It was determined that the matter could not be resolved by settlement at this juncture. However, the parties remain open to discussing settlement as the case progresses.

## XIV. CERTIFICATIONS OF COUNSEL

The undersigned counsel for WhereverTV and Comcast, respectively, hereby declare that, in preparing this final pretrial statement, we have aimed for the just, speedy, and inexpensive resolution of this action.

*/s/ Adam Sanderson*
Adam Sanderson
*Counsel for WhereverTV*

*/s/ Ashok Ramani*
Ashok Ramani
*Counsel for Comcast*